**Emanuel PIAZZA, Jr., and Kathleen Piazza, on behalf of their minor son, Nicholas, Plaintiffs,**

v.

**FLORIDA UNION FREE SCHOOL DISTRICT, Defendant.**

**Case No. 09–CV–7451 (KMK).**

United States District Court, S.D. New York.

April 7, 2011.

Mary Jo Whateley, Esq., Legal Services of the Hudson Valley, Newburgh, NY, Michael Howard Sussman, Esq., Sussman & Watkins, Goshen, NY, for Plaintiffs.

Mark Craig Rushfield, Esq., Shaw, Perelson, May & Lambert, LLP, Poughkeepsie, NY, for Defendant.

### OPINION AND ORDER

KENNETH M. KARAS, District Judge:

Emanuel Piazza, Jr., and Kathleen Piazza (collectively the "Piazzas" or "Plaintiffs") are the parents of Nicholas Piazza ("Nicholas"), a seventeen-year-old in twelfth grade in the Florida Union Free School District ("the District") who has been diagnosed with spinal muscular atro-

phy.[1] Plaintiffs have sued the District, asserting claims under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq. Plaintiffs allege that the District failed to implement Nicholas's Individualized Education Programs ("IEPs") and that the District discriminated against Nicholas because of his disability over the course of multiple school years beginning when Nicholas was in middle school. Pending before the Court is the District's motion for judgment on the pleadings. (Dkt. No. 8.) For the reasons stated herein, the motion is granted in part and denied in part.

### I. Background

#### A. Facts

The facts are drawn from the Complaint, Nicholas's IEPs (entered into the record by the District) from kindergarten through the 2008–2009 school year, Nicholas's tenth grade, and a June 4, 2009 decision of a New York State Review Officer (the "SRO Decision") relating to the first half of the 2008–2009 school year.

Nicholas has been a student in the District at all times relevant to this action. He suffers from spinal muscular atrophy. (Compl. ¶ 4 (Dkt. No. 1).) This condition results in severe muscle weakness throughout Nicholas's body and largely confines him to his bed. (Id.; SRO Decision 1 (attached as Ex. C to Affirmation in Supp. of Mot. for J. Upon the Pleadings Under FRCP 12(c) ("Rushfield Aff.") (Dkt. No. 9)).) He requires constant assistance of a nurse, and is particularly susceptible to colds and respiratory ailments. (6/26/09 IEP at 4.)[2] Nicholas can, however, verbal-

---

1. Although Nicholas is a minor, the Complaint and the Parties' briefs use his full name, so the Court will as well.

2. The eight IEPs for the 2006–2007, 2007–2008, 2008–2009, and 2009–2010 school years appear in the record at Exhibit B to the

Rushfield Affirmation. The District submitted copies of earlier IEPs to the Court following oral argument. The Court will cite the IEPs by their date and will refer to the pages of each individual IEP even though some are unnumbered.

ly communicate, use a computer, use a wheelchair, and attend school functions. (Compl. ¶ 4; SRO Decision 1.) Nicholas has done well in school academically, earning places on the high honor roll and in the National Honor Society. (6/26/09 IEP at 3.)

The IDEA's primary mechanism for guaranteeing students with disabilities access to a "free appropriate public education" ("FAPE"), 20 U.S.C. § 1400(d)(1)(A), is the IEP, *id.* § 1414(d). An IEP is a "written statement" setting forth 1) "the child's present levels of academic achievement and functional performance"; 2) "measurable annual goals," both "academic and functional"; 3) "how the child's progress . . . will be measured"; 4) "the special education and related services and supplementary aids and services" to be provided the child; 5) "an explanation of the extent, if any, to which the child will not participate" in regular school classes and activities; 6) how the child will participate in required testing; 7) a "projected date for the beginning of" the child's support services and details about their "frequency, location, and duration"; and 8) a statement regarding the child's goals for and transition to life post-secondary education. *Id.* § 1414(d)(1)(A)(i)(I)-(VIII). The IEP is created and periodically reviewed and revised by "a team consisting of the child's parents, the child's regular classroom teacher, a special-education teacher, a representative of the local educational agency, and other individuals with knowledge of the child." *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 751 F.Supp.2d 552, 572 (S.D.N.Y.2010) (citing 20 U.S.C. § 1414(d)(1)(B)). This team is referred to here as the "CSE" (Committee on Special Education). (6/20/06 IEP at 4.)

Throughout his school career, Nicholas's IEPs have generally recommended a combination of home and classroom instruc-tion, emphasizing that the division between the two "must remain flexible as [Nicholas's] medical condition and environmental concerns will impact school attendance." (*E.g.*, 3/27/06 IEP at 1.) From Nicholas's fifth grade year on, his IEPs have required "[u]p to twenty hours of academic instruction," and recommended that Nicholas "attend [the relevant] grade for approximately 2.5 hours a day, 3 days a week, as appropriate." (*Id.; see also* 3/18/03 IEP at 4; 6/20/06 IEP at 1; 1/22/07 IEP at 2; 3/22/07 IEP at 2; 9/18/07 IEP at 2; 5/14/08 IEP at 2; 11/19/08 IEP at 2.) In June 2009, however, Nicholas's IEP for the upcoming 2009–2010 school year was altered to provide for a program of "[t]wenty hours of academic instruction at the home" only, noting that "[i]f Nick's medical condition allow[ed] for him to attend school," his IEP would be reviewed. (6/29/09 IEP at 2.)

The IEPs are not particularly detailed about the content of Nicholas's instruction: they note that it should be in a "flexible setting," and that Nicholas's teachers would receive "[t]raining . . . regarding Nick's strengths and abilities as well as needs." (5/14/08 IEP at 1, 2.) Nicholas would be provided with a computer with appropriate upgrades (*id.* at 2); by 2008, this computer was equipped with voice recognition software, (11/19/08 IEP at 5). The IEPs provide that Nicholas would receive a "modified curriculum" in unspecified subjects; the IEPs also note, however, that Nicholas would participate in the same state and local tests administered to general education students. (*E.g.*, 5/14/08 IEP at 2, 3; 3/22/07 IEP at 4 (noting that District was "looking for tutors for all core areas as well as music and art").) In eighth grade and ninth grade, Nicholas was exempted from the District's physical education requirement for medical reasons. (3/27/06 IEP at 2; 3/22/07 IEP at 3.) In tenth grade, however, Nicholas's IEP

was changed to reflect that his physical therapy, which he received five times per week, would fulfill the physical education requirement. (5/14/08 IEP at 3, 4.)

The IEPs contain "comments," apparently voiced at the regular meetings of Nicholas's CSE. These comments reflect some of the allegations in the Piazzas' Complaint. In Nicholas's eighth grade year, for example, the CSE agreed to purchase voice-recognition software for Nicholas, "as a way for [him] to be able to get his thoughts out on paper." (3/27/06 IEP at 4.) The IEP team continued to "look into" other possible technologies for Nicholas to use, but the IEPs do not reflect concrete steps taken toward acquiring these for him (11/19/08 IEP at 5), and, by the end of the 2008–2009 school year, his parents were requesting an independent evaluation regarding the IEPs' treatment of assistive technology and Nicholas's social needs, (6/26/09 IEP at 5.) Also in Nicholas's eighth grade year, the Piazzas voiced concerns that Nicholas was not being included in school events such as field trips and science labs. (6/20/06 IEP at 5.) To accommodate some of the concerns regarding Nicholas's participation, Nicholas's IEP was modified to allow him to use his home tutors to "manipulate objects as [Nicholas] direct[ed] them," to enhance Nicholas's participation in "hands on" activities. (1/22/07 IEP at 4.) These changes made some positive difference. (See 3/22/07 IEP at 4.)

In addition, the Piazzas voiced concerns about the timing of Nicholas's home instruction: at the beginning of Nicholas's ninth grade year, they were unhappy with the availability of Nicholas's English and Spanish tutors, for instance. (9/18/07 IEP at 5.) This dissatisfaction apparently continued throughout ninth grade, as the Piazzas were still "unhappy about some of the times the tutors can get to their home" in May of that year. (5/14/08 IEP at 5.)

The May 14, 2008 IEP notes that Nicholas's home tutors were "certified high school instructors for each subject area," and because these instructors also taught regular school, their schedules were "difficult" to coordinate. (Id.) A specific schedule of times for Nicholas's instruction, requested by the Piazzas, was left out of Nicholas's IEPs. (Id.)

The Complaint, which was filed on August 25, 2009, contains two sets of allegations relating to Nicholas's schooling, in some cases stretching back to elementary school but focusing on Nicholas's middle school and ninth and tenth grade years. The heart of the Complaint is paragraphs 6 and 7, which set forth how the District allegedly failed to properly implement Nicholas's IEPs and discriminated against Nicholas based on his disability. Specifically, paragraph 6 alleges that the District "fail[ed] to properly implement [Nicholas's] [IEPs]," thus depriving him of a "free and appropriate public education," in two general areas—Nicholas's home instruction and assistive technology. (Compl. ¶ 6.) The District, it is alleged,

- failed, during the 2007–2008 and 2008–2009 school years, "to provide Nicholas with home instruction as required by the [IEPs], depriving him of educational service for long stretches of time in academic areas" (id. ¶ 6(a));

- "failed to timely provide substitute teachers" when Nicholas's "assigned teachers" were unavailable, "a frequent occurrence" during these two years (id. ¶ 6(b));

- failed to provide Nicholas with science labs in sixth and seventh grades or facilitate "the provision of alternative modalities" (id. ¶ 6(c));

- failed to provide Nicholas with art, music, or library instruction from elementary school through his seventh grade year (id. ¶ 6(d));

- failed, "despite the recommendation of those performing assistive technology evaluations," to "implement any program to assure that Nicholas is educated in the least restrictive alternative, including the use of distance learning and video-conferencing" (*id.* ¶ 6(e)); and

- failed to conduct "required evaluations," such as those involving assistive technology, and failed to use such technology to help Nicholas learn, (*id.* ¶¶ 6(f)-(g).)

The use of the "assistive technology" referred to allegedly would have allowed Nicholas to be included in classroom instruction and improved his socialization. (*Id.* ¶ 6(e).)

The Complaint also alleges that the District discriminated against Nicholas based on his disability. (*Id.* ¶ 7.) It cites, as examples, instances in which Nicholas was not included in class trips during sixth, seventh, and eighth grade; the school yearbook during two unspecified years;[3] a middle school honor society; school assemblies; meetings with guidance counselors; and extracurricular activities. (*Id.* ¶¶ 7(a)-(f).) It also alleges that the District "failed to schedule home instruction for Nicholas in a manner conducive to his family life," instead "repetitively schedul[ing] such instruction at times which most families, including the Piazzas, devote to family time." (*Id.* ¶ 7(g).) The Piazzas allegedly notified the District of these problems, but that the District's officials took no action in response. (*Id.* ¶¶ 8-9.) The Complaint seeks an order directing the District's compliance with Nicholas's IEPs, directing "compensatory educational services" for Nicholas,[4] an injunction against further discriminatory practices, and an award of compensatory damages, attorneys' fees, and costs. (*Id.* ¶ 15.)

### B. Procedural History

According to the SRO Decision, Plaintiffs filed a due process complaint on July 30, 2008 (the complaint itself is not in the record). (SRO Decision 4.) The Piazzas alleged that Nicholas's May 14, 2008 IEP, which covered the 2008–2009 school year, was inadequate because it did not provide for qualified home instructors, adequate use of assistive technology, or Nicholas's social development. (*Id.*) The Piazzas sought the assignment of "highly qualified home instructors" who could work with Nicholas on a flexible schedule, mandatory training for both home and classroom instructors in adaptive technology and video-conferencing, additional home instruction for Nicholas, and inclusion of Nicholas in school events. (*Id.*) The impartial hearing officer ("IHO") found that the District had denied Nicholas a FAPE: specifically, the IHO found that Nicholas's IEPs should have included specific hours of instruction, a recommendation for use of appropriate assistive technology, and an appropriate statement regarding Nicholas's "social-emotional goals."[5] (*Id.* at 5.) The IHO

---

3. The school years are unspecified in the Complaint, but the SRO's decision reveals that Nicholas's photo was not included in the yearbook in years prior to the 2008–2009 school year, when Nicholas was in tenth grade. (SRO Decision 13.) In the 2008–2009 school year, the District arranged for the Piazzas to submit Nicholas's picture because he could not be at school when the yearbook photos were taken. (*Id.* at 13–14.)

4. As the Second Circuit has noted, " '[c]ompensatory education' is prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education. An award of compensatory education is appropriate only for gross violations of the IDEA." *Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 109 n. 2 (2d Cir.2008) (citation omitted).

5. The IHO's decision is not included in the

also found that the District had failed to implement Nicholas's existing IEPs, and ordered, among other things, that Nicholas's home instruction take place only during specified hours, that the District take various steps to hire "one or more qualified teachers," and that the District provide video-conferencing to Nicholas at home in order to give him as much classroom time as feasible. (*Id.* at 6.)

The State Review Officer ("SRO"), in a decision dated June 4, 2009, affirmed the IHO's decision only in part. The SRO noted that only three issues were raised in the Piazzas's due process complaint: the qualifications of Nicholas's home instructors, assistive technology, and Nicholas's social development. (*Id.* at 9.) The SRO confined his decision to these three subjects, noting that they were the only ones "properly before the [IHO]." (*Id.* at 10.) The record before the SRO indicated that there were "gaps" in Nicholas's home instruction with several causes, including Nicholas's medical needs and hospitalizations. They also resulted from the schedule of instruction requested by the Piazzas, limited to 10:00 A.M. to 4:00 P.M., which apparently made it difficult for some qualified teachers to work with Nicholas. (*Id.* at 10–11.) Nevertheless, the hearing record indicated that "all of [Nicholas's] home instructors ... had New York State certification in their content area." (*Id.* at 11.) Because of these gaps, the SRO concluded, the requirement in Nicholas's IEPs of twenty hours per week of instruction had not been properly implemented "for reasons directly related to the student's medical needs." (*Id.*) The SRO ordered the CSE to determine how many hours Nicholas had missed from September 2008 through January 2009 and ordered the District to make up those hours. (*Id.*) The

SRO encouraged the parties to consider flexible scheduling of this make-up instruction. (*Id.* at 11–12.)

The SRO disagreed with the IHO, however, that the District denied Nicholas adequate assistive technology or opportunities for social development. Nicholas's IEP provided for the use of computers and voice-recognition software and for training in these technologies. (*Id.* at 12.) These provisions were adequate to Nicholas's needs. (*Id.*) The SRO noted that the District, as a result of an assistive technology evaluation completed in August 2008, was considering the use of additional technologies, such as "two-way video, audio, and whiteboard communication" between Nicholas's home and his school, and the SRO "encourage[d]" the Parties to further pursue these technologies. (*Id.* at 13 & n. 8.) It appears that the Piazzas in their due process complaint did not challenge the District's response to the August 2008 assistive technology evaluation. (*Id.* at 13 ("The actions of the CSE related to the November 2008 CSE meeting [during which the August 2008 assistive technology evaluation was reviewed] are not in dispute in the instant case.").) Finally, the SRO concluded the District was not depriving Nicholas of feasible opportunities for social development, noting that Nicholas was included in school activities during the 2008–2009 school year and that the District had taken various steps to facilitate his inclusion in the National Honor Society and the school yearbook. (*Id.* at 13–14.)

The Complaint in this case was filed on August 25, 2009 (Dkt. No. 1), and the District answered one month later, (Dkt. No. 3). In its Answer, the District asserted, as affirmative defenses, that the Court lacks subject matter jurisdiction over the

---

record before this Court. The Court draws this account of the IHO's decision from the SRO Decision's summary.

Complaint's claims as the Plaintiffs failed to exhaust their administrative remedies, and that the claims are time-barred. (Answer (Dkt. No. 3) 2.) This motion followed. The Court held oral argument on the District's motion on January 13, 2011.[6]

## II. Discussion

### A. Standard of Review

■ Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The Court applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir.2010). "On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiffs] favor." *Gonzalez v. Caballero*, 572 F.Supp.2d 463, 466 (S.D.N.Y. 2008); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir.2010).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration, citations, and internal quotation marks omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, 127 S.Ct. 1955. Plaintiffs must allege

"enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (second alteration in original) (quoting Fed.R.Civ.P. 8(a)(2)).

■ In considering a Rule 12(c) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111 (reviewing a Rule 12(b)(6) dismissal); *see also Dingle v. City of New York*, 728 F.Supp.2d 332, 343 (S.D.N.Y.2010) (Rule 12(c) motion); *Bohmer v. New York*, 684 F.Supp.2d 357, 360 (S.D.N.Y.2010) (same). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (internal quotation marks omitted); *see also Bayer Schera Pharma AG v. Sandoz, Inc.*, 741 F.Supp.2d 541, 545 n. 4 (S.D.N.Y.2010) (noting the same, in the context of a Rule 12(c) motion). Finally, the Court may also look to "matters of which judicial notice may be taken," *H & H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F.Supp.2d 351, 357 (S.D.N.Y.2009) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)), "even if the corresponding

---

**6.** At the Court's request, the Parties followed up with letters further addressing the timeliness of Plaintiffs' claims. (*See* Letter from

Sussman & Watkins, Esqs., to the Ct. (Jan. 18, 2011); Letter from Mark C. Rushfield, Esq., to the Ct. (Jan. 25, 2011).)

documents are not attached to[ ] or incorporated by reference in the complaint," *Ackerman v. Local Union 363*, 423 F.Supp.2d 125, 127 (S.D.N.Y.2006). In the context of a Rule 12(c) motion, however, the Court should generally take judicial notice "to determine what statements [the documents] contain[ ] ... not for the truth of the matters asserted." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). "[T]he Court may refuse to accept as true allegations in the Complaint that are contradicted by this record." *Bohmer*, 684 F.Supp.2d at 360; *see also Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F.Supp.2d 176, 193–94 (E.D.N.Y.2010); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (3d ed.2010).

■ The District has submitted two sets of exhibits outside the pleadings: Nicholas's IEPs and the June 4, 2009 SRO Decision. The Court may consider both these exhibits in deciding this motion without converting it to a motion for summary judgment. The IEPs are "integral" to the Complaint because the Complaint asserts that the District "failed to implement Nicholas's IEP," (Compl. ¶ 3); the Complaint therefore necessarily "relies heavily upon [the IEPs'] terms and effect." *Chambers*, 282 F.3d at 153 (internal quotation marks omitted); *see also Combier–Kapel v. Biegelson*, 242 Fed.Appx. 714, 715 (2d Cir.2007) (summary order) (approving of district court's consideration of IHO decision and documents in administrative record in deciding IDEA claims, as documents were subject to judicial notice and integral to complaint). Although the Complaint does not mention the SRO Decision, the Court may consider it as a matter of judicial notice. *See Combier v. Biegelson*, No. 03–CV–10304, 2005 WL 477628, at *1 (S.D.N.Y. Feb. 28, 2005) (considering IHO and SRO decisions on a Rule 12(b)(6) motion in an IDEA case); *Evans v. N.Y. Botanical Garden*, No. 02–CV–3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) ("A court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.").

## B. Analysis

The District asserts two main grounds on which it believes it is entitled to judgment. First, it contends that the Court lacks subject matter jurisdiction over all of Plaintiffs' claims other than those related to the 2008–2009 school year that were raised in the administrative proceedings, because Plaintiffs failed to exhaust available administrative remedies as required by the IDEA. (Def.'s Mem. of Law in Supp. of Mot. for J. Upon the Pleadings Under FRCP 12(C) ("Def.'s Mem.") (Dkt. No. 10) 4.) Second, the District contends that *all* of Plaintiffs' claims are barred by the applicable statutes of limitations. For those claims relating to the 2008–2009 school year, the District notes that Plaintiffs' Complaint does not challenge the substance of the SRO's Decision, and that any such challenge would, at this point, be barred by the four-month statute of limitations governing appeals from such administrative decisions. (*Id.* at 16.) The Plaintiffs' other claims are barred, says the District, by the IDEA'S two-year statute of limitations. (*Id.*). Plaintiffs variously respond that their claims are timely, that the Complaint adequately alleges violations of the Rehabilitation Act, that the IDEA'S exhaustion requirement is not a jurisdictional bar to consideration of these claims, and that Plaintiffs' complaint properly alleges the District's "failure to implement Nicholas' IEPs." (Pls.' Mem. of Law in Opp'n to Def.'s Rule 12(c) Mot. to Dismiss Pls.' Compl. ("Pls.' Mem.") (Dkt. No. 13) 11.)

### 1. Exhaustion

#### a. The IDEA'S Exhaustion Requirement

"The IDEA'S central mandate is to provide disabled students with a 'free appropriate public education' in the least restrictive environment suitable for their needs." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir.2008). As noted above, the IDEA effectuates this purpose via the student's IEP, developed in collaboration among the student's parents, teachers, and school district representatives. *See Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (describing the IEP as Congress's intended "centerpiece of the statute's education delivery system for disabled children"). "Concerned that parental input into the creation of the IEP would not be sufficient to safeguard a child's right to a free and appropriate education, Congress also included within the IDEA procedural safeguards that enable parents and students to challenge the local educational agency's decisions." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir.2002) (citing 20 U.S.C. § 1415). Each state complies with the IDEA's safeguard provision by establishing procedures whereby parents may, among other things, present a complaint "with respect to any matter relating to the ... provision of a free appropriate public education to [their] child." 20 U.S.C. § 1415(b)(6)(A). New York's administrative review system involves two steps: a review of the child's IEP by an impartial hearing officer, *see* N.Y. Educ. Law § 4404(1), and a possible appeal to a state review officer, who may modify any determination made by the impartial hearing officer, *id.* § 4404(2); *see also* 20 U.S.C. §§ 1415(f), (g) (setting forth requirements of impartial due process hearing and review by state educational agency); *Pape v. Bd. of Educ.*, No. 07–CV–8828, 2009 WL 3151200, at *1 n. 1

(S.D.N.Y. Sept. 29, 2009) (describing these requirements).

██ The IDEA provides that "[a]ny party aggrieved by the findings and decision made" in the administrative due process proceedings may bring a civil action "with respect to the complaint presented" in those proceedings. 20 U.S.C. § 1415(i)(2)(A). Crucially, the IDEA subjects not only this cause of action, but *any other* federal statutory claim seeking relief available under the IDEA to the same administrative exhaustion requirement. Specifically, the IDEA provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 ..., title V of the Rehabilitation Act of 1973 ..., or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) [providing for impartial hearing and appeal to the state education agency, respectively] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*); *see also Cave*, 514 F.3d at 246 ("[C]omplainants must overcome this significant procedural hurdle not only when they wish to file a suit under the IDEA itself, but also whenever they assert claims for relief *available* under the IDEA, regardless of the statutory basis of their complaint," (emphasis in original)). The Second Circuit has long held that failure by plaintiffs to exhaust the IDEA'S administrative remedies deprives the court of subject matter jurisdiction over their claims, including claims brought under the other federal statutes referred to in § 1415(*l*) if those claims seek relief avail-

able under the IDEA. *See Cave*, 514 F.3d at 243, 245 & n. 2 (noting that district court lacked subject matter jurisdiction over ADA, Rehabilitation Act, and § 3983 claims due to plaintiffs' failure to exhaust administrative remedies); *Murphy*, 297 F.3d at 199 ("The plaintiff's failure to exhaust administrative remedies ordinarily deprives this court of subject matter jurisdiction over any IDEA claims."); *Polera v. Bd. of Educ.*, 288 F.3d 478, 480, 483 (2d Cir.2002) (holding that district court lacked subject matter jurisdiction over ADA and Rehabilitation Act claims as plaintiff did not exhaust administrative remedies); *see also Hope v. Cortines*, 872 F.Supp. 14, 15–16 (E.D.N.Y.1995) (holding that court lacked subject matter jurisdiction over claims under ADA, § 1983, and Civil Rights Act of 1964 that plaintiff failed to exhaust), *aff'd as to ADA claim*, 69 F.3d 687, 688 (2d Cir.1995).[7] Plaintiffs must

---

7. As Plaintiffs note, the Court of Appeals has, in recent years, issued a number of decisions that arguably muddle this previously clear rule. *See Levine v. Greece Cent. Sch. Dist.*, 353 Fed.Appx. 461, 463 (2d Cir.2009) (summary order) (noting dispute regarding whether exhaustion requirement is "jurisdictional" or "merely an affirmative defense that must be raised by the defendant or else is subject to waiver or forfeiture" but declining to decide the question); *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 203–04 (2d Cir.2007) (noting that Supreme Court decisions requiring careful distinction between "jurisdictional rules and mandatory claims-processing rules" might call into question whether IDEA'S exhaustion requirement is jurisdictional, *id.* at 203, but declining to decide the question); *id.* at 209 n. 1 (Straub, J., concurring) (contending that recent Supreme Court cases do not alter the jurisdictional nature of the IDEA'S exhaustion requirement as applied to IDEA claims, but suggesting that 20 U.S.C. § 1415(*l*) may not be a jurisdictional bar to asserting claims under other federal statutes); *see also Handberry v. Thompson*, 436 F.3d 52, 60 (2d Cir.2006) ("We have not yet ruled on whether the IDEA'S exhaustion requirements are subject to waiver."). Since *Coleman*, the Supreme Court has decided another pair of cases discussing the distinction between "jurisdictional conditions" to the bringing of a suit and "claim-processing rules or elements of a cause of action." *Reed Elsevier, Inc. v. Muchnick*, —— U.S. ——, 130 S.Ct. 1237, 1243–44, 176 L.Ed.2d 18 (2010) (holding that the Copyright Act's registration requirement, 17 U.S.C. § 411(a), is not a jurisdictional prerequisite to suit under the Act); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514–16, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (holding that Title VII's definition of an "employer," which includes only those entities having "fifteen or more employees," 42 U.S.C. § 2000e(b), is not jurisdictional but an element of a Title VII cause of action). The Second Circuit has not had occasion to address its IDEA exhaustion cases in light of these new rulings.

This Court, however, is bound by existing Second Circuit precedent unless and until that precedent is overruled. *See United States v. Emmenegger*, 329 F.Supp.2d 416, 436 (S.D.N.Y.2004) ("[T]his Court is obliged to follow [Second Circuit] precedent until it is overruled by a higher court or until Supreme Court precedent renders it untenable."). Some district courts in this Circuit have continued to refer to the IDEA exhaustion requirements as jurisdictional, even after the Circuit's more recent (and more opaque) cases on the subject and even after *Reed Elsevier* and *Arbaugh* (though usually without much discussion). *See, e.g., French v. N.Y. State Dep't of Educ.*, No. 04–CV–434, 2010 WL 3909163, at *5 (N.D.N.Y. Sept. 30, 2010); *Bryant v. N.Y. State Educ. Dep't*, No. 10–CV–036, 2010 WL 3418424, at *2 (N.D.N.Y. Aug. 26, 2010); *M.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.*, No. 09–CV–5236, 2010 WL 2985477, at *7 n. 8 (S.D.N.Y. July 27, 2010). Other courts treat exhaustion as a requirement of a statutory claim seeking relief available under the IDEA, not as an issue related to subject matter jurisdiction. *See, e.g., Kalliope R. ex rel. Irene D. v. N.Y. State Dep't of Educ.*, No. 09–CV–1718, —— F.Supp.2d ——, —— n. 2, 2010 WL 2243278, at *4 n. 2 (E.D.N.Y. June 1, 2010) ("Here, the parties do not appear to dispute that the exhaustion issue is properly raised in a Rule 12(b)(6)—as opposed to Rule 12(b)(1)—motion." (citing *Coleman*, 503 F.3d at 203–04)).

In this case, even were the Court to accept Plaintiffs' argument and consider the exhaustion requirement an "affirmative defense," the District has not waived the defense, and the IDEA makes clear that exhaustion of ad-

satisfy the IDEA'S exhaustion requirement with respect to each school year discussed in their Complaint. Moreover, even if plaintiffs raise claims relating to a particular school year in administrative proceedings, that does not excuse their failure to exhaust other claims that they later try to bring directly in federal court. *See MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 526 (4th Cir. 2002) ("When parents of a disabled child challenge multiple IEPs in court, they must have exhausted their administrative remedies for *each academic year* in which an IEP is challenged."); *Devine v. Indian River Cnty. Sch. Bd.*, 249 F.3d 1289, 1292 n. 2 (11th Cir.2001) (declining to consider plaintiffs' request for remedies pertaining to academic years before the school year in which they requested a due process hearing); *Myslow v. New Milford Sch. Dist.*, No. 03–CV–496, 2006 WL 473735, at *11 (D.Conn. Feb. 28, 2006) (holding that where plaintiffs sought due process hearing on only some claims later raised in district court, exhaustion requirement was satisfied only with respect to those school years "for which there has been an administrative determination of an inadequate IEP or other denial of a [FAPE]"); *see also A.D. v. Bd. of Educ.*, 690 F.Supp.2d 193, 215–16 (S.D.N.Y.2010) (holding that court lacked jurisdiction over action for tuition reimbursement seeking reimbursement for months outside the school year covered by the IEP challenged in the plaintiffs' administrative due process complaint); *Engwiller v. Pine Plains Cent. Sch. Dist.*, 110 F.Supp.2d 236, 240 (S.D.N.Y.2000) (noting that the IDEA requires the IEP to be "reviewed and re-

vised each school year" (citing 20 U.S.C. § 1414(d))).

The Second Circuit has described the purposes served by the IDEA exhaustion requirement as follows:

> Exhaustion of administrative remedies is required under the IDEA so that disputes related to the education of disabled children are first analyzed by administrators with expertise in the area who can promptly resolve grievances. Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children. If the administrative process is not successful at resolving the dispute, it will at least have produced a helpful record because administrators versed in the relevant issues were able to probe and illuminate those issues for the federal court.

*J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112–13 (2d Cir.2004) (citations and internal quotation marks omitted). Plaintiffs should not be excused from the exhaustion requirement when "administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *Id.* at 113; *see also Gardner v. Uniondale Pub. Sch. Dist.*, No. 08–CV–847, 2008 WL 4682442, at *7 (E.D.N.Y. Oct. 21, 2008) (same).

■■ The IDEA'S exhaustion requirement "does not apply 'in situations in

---

ministrative remedies is an absolute prerequisite to bringing suit under any federal statute for relief available under the IDEA. *See Coleman,* 503 F.3d at 204 ("[W]e are not forced to decide whether our precedent … remains good law … because there can be no claim

of waiver or forfeiture here."); *Levine,* 353 Fed.Appx. at 463 (same, and noting that exhaustion defense is appropriate for decision via pre-answer motion when it can be resolved on the face of the complaint).

which exhaustion would be futile.'" *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir.2007) (quoting *Polera*, 288 F.3d at 488). This "futility exception" covers cases in which a plaintiff demonstrates that "adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." *Id.* (internal quotation marks omitted). These include circumstances, among others, in which parents were not notified of the available due process remedies, *see Weixel v. Bd. of Educ.*, 287 F.3d 138, 149 (2d Cir.2002), the local or state education agency itself was acting contrary to law, *see Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148, 159 (2d Cir.1992), or the defendant is alleged to have committed a "systemic" violation of the IDEA, *Cave*, 514 F.3d at 249. Plaintiffs bear the burden of establishing that the futility exception applies. *See J.S.*, 386 F.3d at 112.

Also covered by this exception are cases in which the complaint alleges that "a school has failed to implement services that were *specified or otherwise clearly stated* in an IEP." *Polera*, 288 F.3d at 489 (emphasis added). The Second Circuit has noted multiple times that this "failure to implement" category of claims is a narrow one, and that courts must "closely examine a plaintiffs claims before concluding that they involve nothing more than 'implementation' of services already spelled out in an IEP." *Id.; see also Levine v. Greece Cent. Sch. Dist.*, 353 Fed.Appx. 461, 465 (2d Cir.2009) (summary order) ("Our cases that have allowed plaintiffs to avoid the exhaustion requirement due to a school district's failure to implement a student's IEP have done so only in narrow situations in which the plaintiffs claim is limited to the allegation that 'a school has failed to implement services that were specified or otherwise clearly stated in an IEP.'" (quoting *Polera*, 288 F.3d at 489)). This is

because plaintiffs could defeat the purposes of the exhaustion requirement by reframing complaints they have regarding the *content* of the program provided their child as claims regarding "implementation." *See Polera*, 288 F.3d at 489 ("[T]he exhaustion requirement is predicated on Congress's belief, expressed through the statutory scheme, that administrative agencies can 'get it right': that the agencies themselves are in the optimal position to identify and correct their errors and to fine-tune the design of their programs. Sweeping exceptions to the exhaustion requirement are at odds with this belief."). Claims that in substance challenge the adequacy and appropriateness of the services provided to a disabled student are best resolved (or at least presented) administratively. *See, e.g., id.* at 487 ("[T]he administrative system is uniquely well suited to review the content and implementation of IEPs ... and to determine what changes, if any, are needed."); *Gardner*, 2008 WL 4682442, at *9 (requiring exhaustion where "the gravamen of plaintiffs' action here relates to the deprivation of free and appropriate educational services").

#### b. Application of the IDEA'S Exhaustion Requirement

The Complaint does not allege that the Plaintiffs exhausted the available administrative remedies, nor does it allege any facts suggesting exhaustion would have been futile. Plaintiffs conceded at oral argument that they did not file any administrative complaints seeking due process hearings other than the one that was the subject of the SRO Decision. Therefore, Plaintiffs must establish that an exception to the exhaustion requirement applies.

#### i. IDEA Claims

The Complaint's IDEA claims are largely framed as "failure to implement" claims (*see* Compl. ¶ 3), but most do not allege deprivation of a service "specified or

otherwise clearly stated in an IEP." The claims relating to the District's failure to provide Nicholas with assistive technology (Compl. ¶¶ 6(e)-(g)) are manifestly not merely "failure to implement" claims; rather, they are challenges to adequacy of the technology services provided by the District. Paragraph 6(e) alleges that the District failed "to implement any program to assure that Nicholas is educated in the least restrictive alternative, including the use of distance learning and video-conferencing"; [8] the Complaint acknowledges, however, that such a program was (at best) a "recommendation" only (*id.* ¶ 6(e)), and nowhere do the relevant IEPs provide that Nicholas would specifically receive such a program. Indeed, when assistive technology was discussed, it was in the context of recommendations for Nicholas's program, with the IEP noting that the District would "look into" the use of particular technologies and that it was "unclear" whether some of these technologies "[would] work or [were] a viable option." (11/19/08 IEP at 5.) This is far from an express provision *requiring* implementation of any particular technology program.

The same can be said for the allegation in paragraph 6(f), that the District "failed to conduct required evaluations, i.e., assistive technology, and then to provide critical educational services in such areas." The allegation that no assistive technology evaluation was done is flatly contradicted by Nicholas's IEP dated November 19, 2008, which discusses in detail the results of an "Assistive Tech eval." (11/19/08 IEP at 5; *see also* 6/26/09 IEP at 6 (noting that the Piazzas "requested independent evaluations to be done for assistive technology and social needs").) If Plaintiffs were dissatisfied with the District's *response* to the assistive technology evaluation, the proper course would have been to challenge Nicholas's IEPs before an impartial hearing officer, who would have had the technical expertise to help the Piazzas craft a more appropriate IEP for Nicholas.[9]

Paragraph 6(a) alleges that "in 9th and 10th grades, defendant district repeatedly failed to provide Nicholas with home instruction as required by the IEP[s], depriving him of educational services for long stretches of time in academic areas." [10]

8. Paragraph 6(g), alleging that "faculty have failed to implement the IEP[s] or use methods available to assist Nicholas learn, i.e., the failure to use assistive technology and to teach Nicholas to use such technology," is duplicative of the claim in ¶ 6(e).

9. The Complaint does not specify, beyond an assistive technology evaluation, what "evaluations" the District was "required" to perform, and does not allege that these evaluations were "required" by Nicholas's IEPs. To the extent the claim in ¶ 6(f) relates to other, unspecified "evaluations," it is therefore subject to dismissal because the evaluations are not "clearly specified" in the IEPs. Plaintiffs' brief discusses another alleged omission: "the District's failure to evaluate Nicholas for an adaptive physical education program and failure to implement such a program for him," (Pls.' Mem. 10.) Nicholas's IEPs do provide that his physical therapy would fulfill the general PE requirement and that Nicholas would

participate in "specially designed or adapted physical education" (11/19/08 IEP at 3); this latter provision was only included in Nicholas's 2008–2009 school year IEPs. (*Id.; see also* 5/14/08 IEP at 3, 5 (implementing this change for the first time).) To the extent, then, that ¶ 6(f) can be read to allege that the District failed to implement this "adapted" PE program during the 2008–2009 school year, it is properly before the Court; for the years prior to 2008–2009, however, the Complaint does not allege a "failure to implement" claim because the earlier IEPs contain no such express guarantee.

10. The Court reads the allegation in ¶ 6(b) of the Complaint, that the District "failed to timely provide substitute teachers" when Nicholas's "'assigned teachers' could not provide instruction, a frequent occurrence in 9th and 10th grades," as a specific example of how Nicholas was deprived of home instruction as alleged in ¶ 6(a).

Whether or not this is an implementation claim depends on *how* the District "failed to provide" home instruction. *See Polera*, 288 F.3d at 489 ("[A] court must closely examine a plaintiffs claims before concluding that they involve nothing more than 'implementation' of services already spelled out in an IEP.") The IEPs clearly require *some* home instruction (though the precise amount is not specified), as they generally "recommend[ ]" that a small portion of Nicholas's schooling should take place in the classroom "as appropriate." (*E.g.*, 5/14/08 IEP at 2 (requiring "[u]p to twenty hours of academic instruction with a combination of home instruction and tenth grade classroom instruction").) This is the only service "clearly stated" in the IEPs: the IEPs do not specify when the instruction should take place, nor how much Nicholas would receive each week, nor who would give it, nor what was to be taught. (*See id.* (noting only that Nicholas would receive a curriculum that was "[c]o-ordinate[d] ... between home and school and modif[ied] as necessary").) Only if the claim is that the District simply failed to provide Nicholas with *any* home instruction, therefore, might it fit within the implementation exception to the exhaustion requirement. Any other failure on the District's part—to provide instruction for a certain amount of time, or at certain times of day, or with certain teachers—that *resulted* in "repeated[ ] fail[ures] to provide Nicholas with home instruction" is not a failure to implement the specific requirements of the IEP. A claim based on such omissions is in substance a claim that Nicholas's IEPs were not specific enough in setting forth requirements that would guarantee him an appropriate level of home instruction. *See Gardner*, 2008 WL 4682442, at *12–13 (holding, in resolving a motion to dismiss under Rule 12(b)(6), that where an alleged failure to implement a provision of an IEP may be traced to the IEP's lack of clarity regarding the school

district's obligations, exhaustion should not be excused because the inadequacies in the IEP could have been corrected via administrative proceedings).

Even viewing the allegations in Plaintiffs' favor, the Court concludes that Plaintiffs' home instruction claims challenge more than simply a failure to implement a specific requirement of the IEPs; they challenge the services those IEPs guaranteed (or, rather, did not guarantee). The remainder of the Complaint's allegations, as well as the other documents in the record properly considered by the Court, demonstrate that the Piazzas' dissatisfaction is with the *manner* in which home instruction was provided. For instance, the Complaint alleges that the District discriminated against Nicholas by "schedul[ing] [home] instruction at times which most families, including the Piazzas, devote to family time." (Compl. ¶ 7(g).) It also alleges that the District failed on certain occasions to provide substitute teachers (*id.* ¶ 6(b)), but the IEPs are silent regarding the procedures for how the District would deal with the periodic absences of Nicholas's regular tutors. The comments in some of the IEPs further reveal that the Piazzas were "unhappy about some of the times the tutors can get to their home," but that the CSE specifically decided *against* putting specific instruction times into the IEPs. (5/14/08 IEP at 5.)

The SRO Decision further demonstrates that Plaintiffs' claim is not that the District wholly denied Nicholas home instruction, and, more importantly, shows that any complaints the Piazzas had regarding its *implementation* could have been remedied administratively. Indeed, the SRO concluded the District *had* failed to properly implement Nicholas's May 14, 2008 IEP because "there were gaps in the delivery of the student's home instruction for various reasons, including the student's medical needs, the parents' requested time

frame for instruction, and the unavailability at times of qualified instructors."[11] (SRO Decision 10 (citations omitted).) Notably, however, the SRO stated that "the district, in 'good faith,' offered home instruction." (*Id.* at 11.) The SRO ordered the CSE to schedule make-up sessions for those hours missed during the relevant time period. (*Id.*) The Court does not assume the veracity of the SRO's conclusions, but his decision is the clearest evidence possible that the exhaustion of this claim would not have been "futile," because the Piazzas brought a similar claim before him (with respect to a certain time period) *and prevailed*. The Plaintiffs provide no explanation why they could not have sought similar relief for the other alleged deprivations of home instruction, particularly given the amorphous requirements in the IEP. Under these circumstances, therefore, ¶ 6(a) does not allege merely a failure to implement a specific provision of an IEP, and exhaustion is therefore not excused. *See Polera*, 288 F.3d at 488–89 (implementation exception did not apply where "[the] IEP's in fact did not clearly state the obligations of the school, and the administrative process could have provided appropriate and expeditious relief"); *Gardner*, 2008 WL 4682442, at *13 ("Where the obligations of the school are not clear, and the administrative process could have provided appropriate relief, the claims will not fall within the 'failure to implement' exception.").

Therefore, with minor exceptions, Plaintiffs' IDEA claims must have been exhausted prior to bringing this action.[12]

### ii. Rehabilitation Act Claims

■ Plaintiffs' Rehabilitation Act claims (Compl. ¶ 7) must also be exhausted pursuant to the IDEA'S procedures to the extent those claims "seek[ ] relief that is also available under" the IDEA. 20 U.S.C. § 1415(*l*); *see also Cave*, 514 F.3d at 246 (discussing the IDEA'S exhaustion requirement as it applies to federal claims brought under statutes other than the IDEA). The claims alleged in the Complaint, which seeks compensatory damages, declaratory and injunctive relief, attorneys' fees, and compensatory education, are covered by this requirement. *See, e.g., Cave*, 514 F.3d at 246–47 (Rehabilitation Act claims seeking damages and injunctive relief that would in substance require a change to the student's IEP were subject to the IDEA'S exhaustion requirement); *Polera*, 288 F.3d at 480–81, 487–88 (claims under the Rehabilitation Act and Americans with Disabilities Act seeking compensatory damages, a declaratory judgment, injunctive relief, and attorneys' fees and costs were subject to the IDEA's exhaustion requirement). Because the Complaint seeks relief available under the IDEA for the alleged violations of the Rehabilitation Act, Plaintiffs' response—that the Complaint adequately alleges facts sufficient to state a Rehabilitation Act claim (Pls.'s Mem. 6–12)—is wholly irrelevant.[13]

---

11. The SRO stated that the May 14, 2008 IEP was "not properly implemented." (SRO Decision 10.) This does not alter the Court's conclusion that the Complaint does not allege a failure-to-implement claim, both because the SRO was not applying the Second Circuit's caselaw on exhaustion and because the SRO Decision found that the reasons for the gaps in home instruction related to facts (such as the timing of instruction) that are not specifically covered by the IEPs.

12. *See supra* note 9 (discussing the allegation that the District failed to provide Nicholas with an adapted physical education program in his tenth grade year). The Complaint also alleges deprivation of science lab, art, music, and library instruction in the school years up to Nicholas's seventh grade. (Compl. ¶¶ 6(c), (d).) The Court need not decide whether these are true failure-to-implement claims, however, because, as discussed *infra*, these claims are time-barred.

13. At and after oral argument, Plaintiffs sug-

Plaintiffs make the further argument that where the Complaint alleges that a school district discriminates against a student on the basis of disability by excluding him from opportunities provided to non-disabled students, requiring exhaustion does not make sense because the source of the student's rights is not his IEPs, but rather other federal laws that guarantee equal treatment and access. (Letter from Sussman & Watkins, Esqs., to the Ct. (Jan. 18, 2011) at 1.) The IDEA'S exhaustion provision recognizes this, but still requires by its terms that claims seeking to enforce those laws be brought administratively first, regardless of their "statutory basis." *Cave*, 514 F.3d at 246 (citing 20 U.S.C. § 1415(*l* )). Moreover, Plaintiffs are incorrect that it is "futile" to exhaust the discrimination claims they raise here, because administrative proceedings allow a school district efficiently to correct any past errors in the student's educational program. *See Polera*, 288 F.3d at 487 (noting that exhaustion "permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes" and "promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children"); *see also id.* at 480 (requiring exhaustion where complaint alleged disabled student was deprived of "study materials" and "recognition of academic achievements"); *Myslow*, 2006 WL 473735, at *8, *10–12 (requiring exhaustion where complaint alleged discriminatory denials of, among other things, "participation in classes as other chil-

dren"); *Hope*, 872 F.Supp. at 23 (noting that exhaustion requirement serves interest of "affording the agency an opportunity to consider and correct errors" (internal quotation marks omitted)).

\* \* \*

To summarize, Plaintiffs did not present their IDEA claims relating to the school years prior to the 2008–2009 academic year in administrative proceedings, and it is clear from the face of the pleadings and exhibits before the Court that Plaintiffs are not, for the most part, asserting that the District "failed to implement" Nicholas's IEPs. Plaintiffs did present certain claims relating to the 2008–2009 school year to the IHO and SRO, but, curiously, Plaintiffs now expressly state that "[t]his action does not constitute ... a challenge" to the SRO's decision; rather, the Complaint alleges independent failures of the District to implement Nicholas's IEPs and acts of discrimination. (Pls.' Mem. 12.) The Complaint also makes no allegations whatsoever regarding the substance of the SRO Decision. Plaintiffs' 2008–2009 claims are only properly before the Court to the extent they were exhausted in the state administrative process or if exhaustion is not required. It appears that, if Plaintiffs are taken at their word, they have abandoned the claims presented in the administrative proceedings and assert only claims that, they say, would not have had to be exhausted. The Court's ruling on the futility exception is therefore fully applicable to IDEA claims arising from the 2008–2009 school year, and the Court has already determined that most of them do

gested that their IDEA claims relating to assistive technology (Compl. ¶¶ 6(e)-(g)) and denial of instruction in certain subject matters (*id.* ¶¶ 6(c)-(d)) were mislabeled in the Complaint, and should be construed as Rehabilitation Act claims. (Letter from Sussman & Watkins, Esqs., to the Ct. (Jan. 18, 2011) at 1 (describing claims as "improperly situated" in the Complaint).) Leaving aside the ques-

tion of how the Court was supposed to have divined this from the Complaint as written, even if the Court took Plaintiffs up on their post-argument suggestion the result would not change: given the relief Plaintiffs seek, any Rehabilitation Act claims based on these events are still subject to the IDEA'S exhaustion requirement.

not state valid "failure to implement" claims. Plaintiffs' Rehabilitation Act claims (arising from all school years) are also unexhausted.

 The claims asserted in paragraphs 6 and 7 of the Complaint are therefore dismissed without prejudice to the extent they still could be exhausted, and with prejudice to the extent they are now time-barred. *Cf. Giano v. Goord*, 380 F.3d 670, 675 (2d Cir.2004) (holding, in the context of the Prison Litigation Reform Act's exhaustion requirement, that "dismissal with prejudice, when remedies are no longer available, is required in the absence of any justification for not pursuing such remedies" (alteration and internal quotation marks omitted)). The claim in ¶ 6(f) may go forward to the extent it alleges the failure to implement an "adapted physical education" program guaranteed by Nicholas's IEPs during the 2008–2009 school year. The Piazzas were not required to bring this claim before the IHO.[14]

### 2. Statute of Limitations

The District alternatively contends that it is entitled to judgment on all of Plaintiffs' claims because they are time-barred.

The District is correct with respect to the allegations in the Complaint relating to Nicholas's seventh grade year and before. (Compl. ¶¶ 6(c)-(d).)

 Rehabilitation Act claims in New York are governed by New York's three-year statute of limitations governing personal injury actions, N.Y. C.P.L.R. § 214(5). *See, e.g., Schreiber v. E. Ramapo Cent. Sch. Dist.*, 700 F.Supp.2d 529, 566 (S.D.N.Y.2010); *Pape*, 2009 WL 3151200, at \*8. The limitations period governing IDEA claims depends on what type of claim is being asserted. The District points out that the IDEA applies a two-year statute of limitations to complaints asserting a FAPE violation presented in state administrative proceedings. (Def.'s Mem. 16.) *See* 20 U.S.C. § 1415(b)(6)(B) (administrative complaint may assert "an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint ...."); *id.* § 1415(f)(3)(C) (due process hearing must be requested "within 2 years of the date the parent or agency knew or should have known about the alleged action that forms

---

**14.** The District relies on language in some exhaustion cases in the Second Circuit for the proposition that *all* a plaintiff's claims in an IDEA action must be failure-to-implement claims or *none* may go forward. (Def.'s Mem. 8 ("[T]he plaintiffs' claim in an action must be limited to the allegation that the school had failed to implement services specified or clearly stated in the IEP.")). *See, e.g., Levine*, 353 Fed.Appx. at 465 (noting that the implementation exception applies when "the plaintiffs claim is *limited* to the allegation that 'a school has failed to implement services that were specified or otherwise clearly stated in an IEP' " (emphasis added) (quoting *Polera*, 288 F.3d at 489)). These cases, however, each concluded that the plaintiffs there had not alleged a true failure-to-implement claim at all, but rather alleged substantive inadequacies in a student's educational program. *See id.; Polera*, 288 F.3d at 489. The District

has not explained why a court may not allow certain claims alleging implementation problems to go forward unexhausted, while dismissing those claims that must be exhausted. *See Zahran ex rel. Zahran v. Bd. of Educ.*, No. 03–CV–615, 2004 WL 1242962, at \*4 (N.D.N.Y. June 4, 2004) (considering an exhausted claim but dismissing unexhausted ones in IDEA case); *see also Coleman*, 503 F.3d at 207 (describing the Second Circuit's "well-established precedent that federal courts lack subject matter jurisdiction over IDEA claims that are unexhausted and that do not meet one of the limited exceptions to the statute's exhaustion requirement"); *cf. Ortiz v. McBride*, 380 F.3d 649, 663 (2d Cir. 2004) (holding that complaints regarding prison conditions containing claims only some of which have been exhausted pursuant to the Prison Litigation Reform Act need not be dismissed in their entirety).

the basis of the complaint. . . ."); *Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 114 n. 7 (2d Cir.2008) (noting that § 1415(f)(3)(C) became effective in July 2005). However, this limitations period, by its express terms, only governs the time required to bring a complaint in state and local administrative proceedings. *See, e.g., French v. N.Y. State Dep't of Educ.*, No. 04–CV–434, 2010 WL 3909163, at *4–5 (N.D.N.Y. Sept. 30, 2010) (noting this distinction); *Mason ex rel. Mason v. Schenectady City Sch. Dist.*, 879 F.Supp. 215, 220 (N.D.N.Y.1993) (same, prior to the IDEA'S 2005 amendment). The IDEA includes a separate statute of limitations governing claims that have been exhausted through the statute's administrative proceedings: a party must bring the action in federal court "90 days from the date of the decision of the hearing officer . . . or, if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows." 20 U.S.C. § 1415(i)(2)(B). In New York, that time limit is four months after the SRO's decision is final. *See* N.Y. Educ. Law § 4404(3)(a); *J.G. ex rel. J.G. v. Bd. of Educ.*, No. 07–CV–7245, 2008 WL 3843523, at *2 (S.D.N.Y. Aug. 14, 2008).

■ On the limitations period governing the claims Plaintiffs assert here, unexhausted IDEA claims brought directly in federal court, the IDEA is silent.[15] Where a federal statute does not specify the limitations period for a cause of action it creates, a court generally applies the statute of limitations from the most closely analogous state statute. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 414, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005) ("To determine the applicable statute of limitations for a cause of action created by a federal statute, we first ask whether the statute expressly supplies a limitations period. If it does not, we generally 'borrow' the most closely analogous state limitations period."); *Somoza*, 538 F.3d at 114 n. 7 (same in the IDEA context). Courts in the Second Circuit considering IDEA claims that are permissibly unexhausted have followed this rule by applying a three-year statute of limitations borrowed from N.Y. C.P.L.R. § 214(2).[16] *See S.W. ex rel. J.W. v. Warren*, 528 F.Supp.2d 282, 301–02 (S.D.N.Y.2007) (applying three-year limitations period in case in which plaintiffs were excused from exhausting the IDEA'S administrative remedies); *Butler v. S. Glens Falls Cent. Sch. Dist.*, 106 F.Supp.2d 414, 418 (N.D.N.Y.2000) ("[A] three year statute of limitations applies where the complaint alleges that the defendant failed to comply with the procedural safeguards provided in the IDEA." (citing N.Y. C.P.L.R. § 214(2))); *Brooklyn Sch. for Special Children v. Crew*, No. 96–

---

15. Silent because the IDEA only creates a cause of action for "part[ies] aggrieved" by findings or decisions made in state administrative proceedings, 20 U.S.C. § 1415(i)(2)(A), so an "unexhausted" IDEA claim is something of an extra-textual animal to begin with, *see Coleman*, 503 F.3d at 211 (Straub, J., concurring) ("[T]he exceptions to the IDEA'S exhaustion requirement derive not from judicial doctrine, but from the statute's unambiguous legislative history. . . . [T]hey are, effectively, statutory exceptions that courts must follow to carry out the clear intent of Congress.").

16. N.Y. C.P.L.R. § 214(2) provides that "an action to recover upon a liability, penalty or forfeiture created or imposed by statute except as provided in sections 213 and 215" must be brought "within three years." Section 213 provides for a six-year limitations period governing, among other things, actions "for which no limitation is specifically prescribed by law." *Id.* § 213(1). Section 215 provides for a one-year limitations period governing certain intentional torts and other claims not analogous to those asserted here. The federal courts applying § 214(2) to IDEA claims generally take no notice of these exceptions.

CV–5014, 1997 WL 539775, at *12 (S.D.N.Y. Aug. 28, 1997) (applying three-year statute of limitations to action under IDEA challenging municipality and state's compliance with IDEA'S reimbursement procedures); *Shanahan v. Bd. of Educ.*, 953 F.Supp. 440, 443 (N.D.N.Y.1997) (applying three-year statute of limitations to action for attorneys' fees under IDEA); *Mason*, 879 F.Supp. at 219–20 (applying three-year limitations period to claim alleging school district's failure to comply with IDEA's procedural safeguards by failing to inform the student and his parent of their rights to challenge the district's placement and program decisions); *see also Dreher v. Amphitheater Unified Sch. Dist.*, 22 F.3d 228, 231–32 (9th Cir.1994) (applying Arizona statute of limitations governing "liabilities created by statute, other than a penalty or forfeiture" in case where exhaustion was excused, noting that the action was "not analogous to an appeal of a final administrative decision").[17]

**17.** These cases were decided prior to the Second Circuit's decision in *Somoza*, which held, among other things, that prior to the IDEA'S 2005 amendment, N.Y. Education Law § 4404(1)(a) was "the most appropriate reference point for a limitations period" on IDEA claims. *Somoza*, 538 F.3d at 114 n. 7. *Somoza* dealt with the timeliness of an administrative claim, rather than an unexhausted IDEA claim brought directly in federal court. *See id.* at 108–09, 113–14. Section 4404(1)(a) governs complaints submitted to IHOs pursuant to the IDEA and, prior to 2005, had been interpreted to include a one-year statute of limitations on such complaints. *See id.* at 114 n. 7. Section 4404(1)(a) has since been amended to conform with the IDEA'S two-year statute of limitations. *See* N.Y. Educ. Law § 4404(1)(a) (McKinney 2010). *Somoza* rejected the application of the three-year statute of limitations governing personal injury claims in New York, finding § 4404(1)(a) more closely analogous. *See Somoza*, 538 F.3d at 114 n. 7.

This raises the question of why § 4404(1)(a) would not be a better analogy than N.Y. C.P.L.R. § 214(2), which is even less analogous to the type of IDEA claims brought here than the statute governing personal injury claims. Indeed, the *Somoza* court noted its disagreement with the First Circuit's decision in *Murphy v. Timberlane Regional School District*, 22 F.3d 1186 (1st Cir.1994), which borrowed New Hampshire's "catch-all," six-year limitations period for personal actions. *See Somoza*, 538 F.3d at 114 n. 7 (citing *Murphy*, 22 F.3d at 1194). No court has addressed whether *Somoza* is relevant to unexhausted IDEA claims brought in federal court.

There also is the question of whether *any* state law is sufficiently analogous to the claims brought here to justify borrowing a state statute of limitations at all. The Supreme Court has held that it is sometimes "more appropriate to borrow limitation periods found in other federal, rather than state, statutes," *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 148, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), as when "a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking," *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Indeed, the Second Circuit has noted that it has "become increasingly apparent in the last several years [that] state limitations periods do not necessarily complement federal statutes and borrowing them sometimes proves unwise." *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 394 (2d Cir.2001) (citations omitted) (quoting *Phelan v. Local 305 of the United Ass'n of Journeymen*, 973 F.2d 1050, 1058 (2d Cir. 1992)) (citing cases). In the Second Circuit, courts borrow federal rather than state limitations periods where "(1) a federal rule of limitations clearly provides a closer analogy than state alternatives, and (2) the federal policies at stake and the practicalities of the litigation render the federal limitation period a significantly more appropriate vehicle for interstitial lawmaking." *Id.* (quoting *Phelan*, 973 F.2d at 1058).

There is a persuasive case that the limitations period for the "unexhausted" IDEA claims presented here has a closer analogue in federal law than N.Y. C.P.L.R. § 214(2) or anything in New York state law governing personal injury claims: the two-year statute of limitations *in the IDEA itself* governing

The Court will therefore apply a three-year limitations period, the most generous option advanced by the Plaintiffs. (Pls.' Mem. 13.) The claims in ¶¶ 6(c) and (d) of the Complaint, alleging that Nicholas was deprived of science lab, art, music, or library instruction through the seventh grade (2005–2006 school year) are time-barred no matter whether they are construed as IDEA or Rehabilitation Act claims. These claims would have accrued no later than Nicholas's seventh grade year, which ended over three years before the Complaint in this case was filed, on August 25, 2009. *See Somoza*, 538 F.3d at 114 ("An IDEA claim accrues on the date that a plaintiff or his parent 'knew or should have known about the alleged action that forms the basis of the complaint.'" (quoting 20 U.S.C. § 1415(b)(6)(B))); *Pape*, 2009 WL 3151200, at *8–9 (holding that Rehabilitation Act claims accrue when the plaintiff knows or has reason to know of the allegedly discriminatory acts). On the other hand, the claim in ¶ 6(f), to the extent it alleges failure to implement an "adapted physical

education" program during the 2008–2009 school year, may go forward, as it accrued within one year prior of the date the Complaint was filed.

At oral argument, Plaintiffs contended that N.Y. C.P.L.R. § 208, which tolls statutes of limitations on claims accruing during a person's infancy, should apply here, meaning that *all* claims in this action, which are asserted on behalf of Nicholas (a minor), are timely and that the statute of limitations will not begin to run on any of them until his eighteenth birthday in September 2011.[18] (Letter from Sussman & Watkins, Esqs., to the Ct. (Jan. 18, 2011) at 1.) *See Mason*, 879 F.Supp. at 220 n. 4 (applying, without any discussion, C.P.L.R. § 208 to an unexhausted IDEA claim alleging that school district failed to comply with the IDEA'S procedural safeguards); *see also Mulkern v. N.Y. State Police*, No. 08–CV–8870, 2010 WL 5584598, at *3 & n. 3 (S.D.N.Y. Dec. 8, 2010) (noting that C.P.L.R. § 208's provision allowing tolling if the plaintiff is insane at the time the cause of action accrued could apply to a Rehabilitation Act claim), *adopted by* 2011

---

*administrative* claims. *Cf. P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 736 (3d Cir.2009) ("We are convinced that IDEA'S [two-year] limitations period is a better fit for education claims made under the Rehabilitation Act than the personal injury statute of limitations [under Pennsylvania law]."). Both sets of claims involve the allegation of a denial of a "free appropriate public education" and both seek to assert rights created by the same federal statute. *Cf. Malley–Duff*, 483 U.S. at 151, 107 S.Ct. 2759 (holding that the Clayton Act provided the closest analogue to civil RICO claims because RICO was modeled on the Clayton Act, both statutes are designed to compensate the same type of injury, and both statutes use the same mechanism for doing so (treble damages)). And, this limitations period would be consistent with the Second Circuit's view in *Somoza* that Education Law § 4404(1)(a), which also provides for a two-year limitations period, is an appropriate analogue. The Second Circuit, in contrast to the Third Circuit in *P.P.*,

has held that claims under the *Rehabilitation Act* brought in the context of education disputes are governed by the relevant state statute of limitations applicable to personal injury claims, *see M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 224 (2d Cir.2003), but has never extended this holding to "unexhausted" IDEA claims.

18. This action is brought by Nicholas's parents, not Nicholas himself. Nevertheless, it is brought on Nicholas's behalf, and some courts have held that in that situation, § 208 can apply, presumably because the claims are in reality those of the infant even though brought by a parent or guardian on his behalf. *See, e.g., Kulpa ex rel. Kulpa v. Glass*, 903 F.Supp. 321, 322–23 (N.D.N.Y.1995) (holding that § 208 applied to mother's § 1983 claim against state Department of Social Services brought on behalf of adopted children even though mother had standing to assert the claims herself as children's guardian).

WL 135001 (S.D.N.Y. Jan. 13, 2011). The argument is unavailing.[19]

■ "[F]ederal courts must borrow a state's equitable tolling rules *unless* to do so 'would defeat the goals of the federal statute at issue.'" *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 224 (2d Cir.2003) (emphasis in original) (quoting *Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989)). In *M.D.*, the Second Circuit refused to apply an equitable tolling rule in a Connecticut statute to IDEA and Rehabilitation Act claims that would have allowed them to be brought a significant time after they accrued. The statute at issue created a two-year limitations period on claims challenging educational placements, but allowed for equitable tolling until plaintiffs received notice of the statute's procedures. *Id.* at 222–23. The Second Circuit held that the Connecticut statute was "the most closely analogous [state] statute to the IDEA," *id.* at 222, but declined to borrow the equitable tolling provision: to do so would allow claims to be tolled indefinitely or for a significant period of time (as notice could not be provided to those plaintiffs whose claims had accrued prior to the Connecticut statute's enactment and it would be difficult to provide notice to those plaintiffs

who had left a school district). *Id.* at 224. Allowing claims to be brought "long after their accrual date" would defeat one of the IDEA'S "fundamental goals," "the expeditious resolution of educational programming disputes." *Id.*

■ The same is true here. IDEA claims by their very nature are almost always brought by or on behalf of minors, as are claims under other federal statutes, like the Rehabilitation Act, alleging disability discrimination in educational settings. The statutory scheme created by the IDEA, which seeks to channel such claims through administrative proceedings that allow state and local educational officials to address problems, has as its goal the prompt presentation and resolution of disputes, thus allowing the student to get the services he or she needs as quickly as possible. *See id.; see also Polera*, 288 F.3d at 487 ("The purpose of the IDEA is to provide educational services, not compensation for personal injury."); *Alexopulos ex rel. Alexopulos v. S.F. Unified Sch. Dist.*, 817 F.2d 551, 556 (9th Cir.1987) ("Congress recognized that it is critical to assure appropriate education for handicapped children at the earliest time possible. Failure to act promptly could irretrievably impair a child's educational

---

19. There is a conflict among the Circuits regarding whether minority tolling provisions should be applied to IDEA claims. *Compare Shook ex rel. Shook v. Gaston Cnty. Bd. of Educ.*, 882 F.2d 119, 121 & n. 2 (4th Cir. 1989) (holding that they can, because IDEA claims are claims belonging to the child as well as to the child's legal representatives), *with Strawn v. Mo. State Bd. of Educ.*, 210 F.3d 954, 958 (8th Cir.2000) ("[W]e decline to apply a tolling provision for minors because tolling the statute of limitations for an entire childhood would frustrate federal policy. . . ."); *Alexopulos ex rel. Alexopulos v. S.F. Unified Sch. Dist.*, 817 F.2d 551, 555 (9th Cir.1987) (holding that California's tolling provision would not apply because the IDEA'S predecessor "is designed to assure

that representatives of handicapped children would promptly assert the children's educational rights," and allowing tolling "would undercut this federal policy"); *see also* Lynn M. Daggett et al., *For Whom the School Bell Tolls But Not the Statute of Limitations: Minors and the Individuals with Disabilities Education Act*, 38 U. Mich. J.L. Reform 717, 750–65 (2005) (reviewing the differing views on whether IDEA and related claims should be tolled during student's minority, and concluding that decision *not* to apply tolling statutes is most consistent with Supreme Court's cases holding that rule of adoption of state limitations and tolling provisions should be ignored if state rules would conflict with federal policies).

progress."); *cf. SJB ex rel. Berkhout v. N.Y.C. Dep't of Educ.*, No. 03–CV–6653, 2004 WL 1586500, at *7 (S.D.N.Y. July 14, 2004) (declining to apply "continuing violation" exception to statute of limitations for IDEA claims, noting "the concern of the IDEA is the prompt provision of necessary services as determined by knowledgeable professionals to disabled children."). Application of C.P.L.R. § 208's minority tolling provision, which would allow claims to be brought years after they accrued and often after any effective remedy could be fashioned that could improve the student's educational program, is fundamentally inconsistent with this goal. *See, e.g., Strawn v. Mo. State Bd. of Educ.*, 210 F.3d 954, 958 (8th Cir.2000) ("[W]e decline to apply a tolling provision for minors because tolling the statute of limitations for an entire childhood would frustrate federal policy. . . ."); *Alexopulos*, 817 F.2d at 555 (holding that California's minority tolling provision should not apply because the IDEA'S predecessor "is designed to assure that representatives of handicapped children would promptly assert the children's educational rights," and allowing tolling "would undercut this federal policy").[20]

## III. Conclusion

For the reasons stated herein, the District's motion is denied with respect to the claim asserted in ¶ 6(f) of the Complaint to the extent it alleges failure to implement an adapted physical education program in Nicholas's tenth grade year, as required by the relevant IEP. The District's motion is granted in all other respects: Plaintiffs' remaining claims are dismissed without prejudice to the extent they still could be the subject of an administrative complaint, and with prejudice to the extent such a complaint would be time-barred under the IDEA. *See* 20 U.S.C. § 1415(f)(3)(C). The Clerk of Court is respectfully directed to close the pending motion. (Dkt. No. 8.)

SO ORDERED.

---

**20.** Plaintiffs' counsel at oral argument complained that the administrative remedies required by the IDEA are "inefficacious" to relieve past instances of disability discrimination, and that such proceedings can involve long delays. On the latter point, New York law requires, unless the parties agree otherwise, that administrative proceedings commence not later than 44 days following the filing of a parent's due process complaint, and the IHO must render a decision within 45 days thereafter. *See* N.Y. Comp.Codes R. & Regs. tit. 8, § 200.5(j)(3)(iii)(b); *id.* § 200.5(j)(4)(ii)(5). When an appeal is filed, the SRO must reach a decision within thirty days from his receipt of the appeal. *See id.* § 200.5(k)(2). The time it can take to get a decision via litigation in federal court is geologic by comparison. Moreover, complaints regarding the effectiveness of the IDEA'S administrative scheme must be made to Congress, which can change the law, or to the relevant New York State authorities in a position to reform the conduct of administrative proceedings. They are not properly made to this Court, which must apply the IDEA as enacted.