07-1120-cv
Cave v. East Meadow Union Free School District

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

-------------

August Term 2007

(Argued: October 5, 2007                    Decided: January 23, 2008)

Docket No. 07-1120-cv

--------------------------------------------------X

JOHN CAVE and NANCY CAVE as individuals, parents, legal guardians and guardians ad litem of John Cave Jr. and JOHN CAVE Jr.,

Plaintiffs-appellants,

- against -

EAST MEADOW UNION FREE SCHOOL DISTRICT, W. TRESPER CLARKE HIGH SCHOOL, ROBERT R. DILLION as administration of The East Meadow Union Free School District and W. Tresper Clarke High School and ROBERT R. DILLON individually and personally, JOSEPH BARBERA as administration of The East Meadow Union Free School District and W. Tresper Clarke High School and JOSEPH BARBERA individually and personally, LEON J. CAMPO as administration of The East Meadow Union Free School District and W. Tresper Clarke High School and LEON J. CAMPO individually and personally, TIMOTHY VOELS as administration of The East Meadow Union Free School District and W. Tresper Clarke High School and TIMOTHY VOELS individually and personally, DEBORAH COATES as President of the Board of Education of East Meadow School District and W. Tresper Clarke High School and DEBORAH COATES individually and personally, BRIAN O'FLAHERTY as Vice President of the Board of Education of East Meadow School District and W. Tresper Clarke High School and BRIAN O'FLAHERTY individually and personally, DEBRA KIRSH as Trustee of the Board of Education of East Meadow Union Free School District and W. Tresper Clarke High School and DEBRA KIRSH individually and personally, JUDY SCHIECHEL as Trustee of the Board of Education of East Meadow Union Free School District and W. Tresper Clarke High School and JUDY SCHIECHEL individually and personally, WALTER SKINNER as Trustee of the Board of Education of East Meadow Union Free School District and W. Tresper Clarke High School and WALTER SKINNER individually and personally, BARRY RUBINSTEIN as Trustee of the Board of Education of East Meadow Union Free School District and W. Tresper Clarke

High School and BARRY RUBINSTEIN individually and personally, JOSEPH PARISI as TRUSTEE of the Board of Education of East Meadow Union Free School District and W. Tresper Clarke High School and JOSEPH PARISI individually and personally, GERALDINE DODDATO as Assistant Principal and administration of The East Meadow Union Free School District and W. Tresper Clarke High School and GERALDINE DODDATO individually and personally, DARRYL STRABUK as Assistant Principal and administration of The East Meadow School District and W. Tresper Clarke High School and DARRYL STRABUK individually and personally, PATRICE DOBIES as an employee, agent and servant of East Meadow Union Free School District and W. Tresper Clarke High School and PATRICE DOBIES individually and personally and JOHN CAMPO as an employee, agent and servant of East Meadow School District and W. Tresper Clarke High School and JOHN CAMPO individually and personally,

Defendants-appellees.

-------------------------------------------------X

Before: FEINBERG, CALABRESI, and WESLEY, Circuit Judges.

Plaintiffs-appellants seek review of a decision of the United States District Court for the Eastern District of New York (Spatt, J.) denying their motion for a preliminary injunction enjoining defendants-appellees from denying plaintiff-appellant John Cave Jr. entry to his high school and any school facility while accompanied by his service dog. We remand the case to the district court and direct it to dismiss without prejudice plaintiffs-appellants' complaint in its entirety for lack of subject matter jurisdiction due to plaintiffs-appellants' failure to exhaust the administrative remedies available to them under the IDEA. We also deny the motion to certify all questions of state law to the New York Court of Appeals.

PAUL J. MARGIOTTA, ESQ., Lindenhurst, NY, for plaintiffs-appellants.

STANLEY A. CAMHI, ESQ., Jaspan, Schlesinger & Hofman, LLP, Garden City, NY, for defendants-appellees.

FEINBERG, Circuit Judge:

Plaintiffs-appellants, disabled high school student John Cave Jr. ("John, Jr.") and his parents, appeal from a decision of the United States District Court for the Eastern District of New York (Spatt, J.) denying their motion for a preliminary injunction under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and 42 U.S.C. §

- 2 -

1983 ("§ 1983"). The injunction sought would have restrained defendants-appellees from denying John, Jr. entry to his high school and all school facilities while accompanied by his service dog, Simba. The judge, in a thorough opinion, denied appellants' motion because they had failed to establish a reasonable likelihood of success on the merits of their federal and state law claims. *See Cave v. E. Meadow Union Free Sch. Dist.*, 480 F. Supp. 2d 610 (E.D.N.Y. 2007). We hold that the district court lacked subject matter jurisdiction over appellants' federal claims because, before filing their suit, appellants failed to exhaust the administrative remedies provided by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and its implementing state legislation. We also hold that in the absence of jurisdiction over the federal claims, the exercise of supplemental jurisdiction over appellants' state law causes of action was improper. We therefore direct the district court to dismiss without prejudice appellants' complaint in its entirety for lack of subject matter jurisdiction.

## I. BACKGROUND

John, Jr. is a hearing-impaired student enrolled in the W. Tresper Clarke High School in the East Meadow Union Free School District. To minimize the impact of John, Jr.'s disability in the educational setting, the school authorities, in collaboration with his mother, developed an individual education program ("IEP") designed to meet his specific needs and enable him to be a fully mainstreamed student. John, Jr. has had an IEP designed for him since the age of three. *Cave*, 480 F. Supp. 2d at 630. Under his current IEP, John, Jr. is provided with a wide range of special education and support services, including a sign language interpreter for all academic subjects, individual sessions with a teacher of the hearing-impaired, a classroom note taker, a microphone system that allows him to hear sounds more clearly, a closed-caption device when videos are shown in class and preferential classroom seating. *Id.* at 616-21.

In December 2006, John, Jr.'s parents asked the high school authorities to allow him to bring his newly acquired service dog, Simba, to school with him every day. Despite the variety of accommodations supplied by the school for John, Jr.'s disability, his parents urged that Simba's presence was necessary, as Simba would alert John, Jr. to emergency bells, to people calling his name, or to sounds of car engines in the street, and would generally enhance his socialization skills. *Id.* at 619, 621. More important, his parents claim that Simba is for John, Jr. an "independent life tool," which, like his cochlear implants, is supposed to increase his independence and limit the effects of the hearing impairment. *Id.* at 617, 619.

The school officials denied the Caves' request on the ground that the presence of the dog would prove disruptive to John, Jr.'s education, since his class schedule and his overall education program would have to be modified to avoid the exposure of allergic

students and teachers to the dog. The school district's Section 504 team[1] met in December 2006 to consider the problem. Appellants did not attend that meeting, at which the Section 504 team determined that John, Jr. enjoyed full access to the district's special education programs and facilities and that he currently did not need a service dog at school, because he was functioning satisfactorily under the approved IEP. Thereafter, the Section 504 team convened a meeting of the school district's Committee on Special Education ("CSE"). Appellants did attend that meeting. However, the CSE affirmed the findings of the Section 504 team. Although appellants were informed about the availability of administrative review of the school district's decisions, they did not use this process. *Id.* at 626-27, 630-31.

Instead, after a series of confrontations with school officials, appellants filed this lawsuit in February 2007 against the high school and the school district, in addition to 15 district officials and high school employees in their official and individual capacities, alleging violations of the ADA, Section 504 and § 1983, as well as several New York statutes (the New York State Human Rights Law, the New York Civil Rights Law and the New York Education Law). In their complaint, appellants not only asked for preliminary and permanent injunctions enjoining the school officials from barring John, Jr. access to the school and its facilities when accompanied by Simba, but also sought $150,000,000 in compensatory and punitive damages, along with court expenses and attorneys' fees.

Thereafter, the district court conducted a four-and-one-half-day hearing on plaintiffs' motion for a preliminary injunction. The judge denied the motion because the

---

[1] The Section 504 team is a school-based team charged with protecting the rights of disabled students under Section 504. The team is made up of a designated school district officer –the "504 Compliance Officer"– and persons knowledgeable about the particular student's needs, such as school psychologists and special instructors, including the parents, if they choose to participate.

Caves had not established a reasonable likelihood of success on the merits of the underlying action due to their failure to exhaust the administrative remedies available under the IDEA, a failure fatal to their federal causes of action. *Id.* at 635-39.

After the district court denied the motion for a preliminary injunction, defendants moved, on March 20, 2007, to dismiss the complaint in its entirety for lack of subject matter jurisdiction or, in the alternative, for summary judgment. Also on March 20, the Caves appealed from denial of the preliminary injunction and thereafter moved in this court to certify all questions of state law to the New York Court of Appeals. That motion has been referred to this panel for a decision simultaneous with our disposition of the appeal.

## II. ANALYSIS

### A. FEDERAL CLAIMS

#### 1. The IDEA's Exhaustion Requirement

In this court, appellants assert various infringements by appellees of John, Jr.'s rights under the ADA, Section 504 and § 1983. They essentially allege federal question jurisdiction under 28 U.S.C. § 1331, which provides that district courts have original jurisdiction over claims that arise under the Constitution or the laws of the United States. Appellants' right to judicial relief does depend ultimately on the construction of these federal statutes, but appellees' first argument requires us to consider whether we are barred from considering them at all at this time if the IDEA applies.[2] *See* Br. of Appellees at 26. The district court carefully summarized the statutory framework and we see little purpose

---

[2] For reasons we explain in greater detail below, the IDEA's exhaustion requirement applies equally to relief available under other statutes, such as the ADA, Section 504, and § 1983, if the relief sought under those statutes would also be available under the IDEA. Thus, if the IDEA is applicable – a question that we answer in the affirmative below – it forecloses the relief appellants seek under those other statutes.

in reiterating its analysis. *Cave*, 480 F. Supp. 2d at 633-36. We highlight here only some essential points.

The IDEA's central mandate is to provide disabled students with a "free appropriate public education" in the least restrictive environment suitable for their needs. *Heldman ex rel. v. Sobol*, 962 F.2d 148, 150 (2d Cir. 1992). Under the educational scheme of the IDEA (previously known as the Education of the Handicapped Act), parents of students with disabling conditions are guaranteed "both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig v. Doe*, 484 U.S. 305, 311-12 (1988). Parents are specifically entitled to request a due process hearing in order to present complaints as "to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." 20 U.S.C. § 1415(b)(6)(A); *see also id.* § 1415(f)(1)(A), (g) and (h) (delineating procedural safeguards to be accorded to parties filing a complaint and their right to seek review through local and state administrative avenues). New York has opted for a two-tier administrative system for review of IEPs. First, an impartial hearing officer is selected from a list of certified officers and appointed by the local board of education or the competent state agency to conduct the initial hearing and issue a written decision. That decision can then be appealed to a state review officer of the New York Education Department. *Heldman*, 962 F.2d at 152 (citing N.Y. Educ. Law § 4404(1) – (2)).

Only after exhaustion of these procedures has an aggrieved party the right to file a suit in a federal or state court. 20 U.S.C. § 1415(i)(2)(A). The parties do not dispute this requirement. Failure to exhaust the administrative remedies deprives the court of subject matter jurisdiction. *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d

478, 483 (2d. Cir. 2002) (citing *Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir. 1995)). The purpose of the exhaustion rule is to "channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." *Id.* at 487; *see also Heldman*, 962 F.2d at 159 (pointing out that exhaustion "permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes").

Importantly, complainants must overcome this significant procedural hurdle not only when they wish to file a suit under the IDEA itself, but also whenever they assert claims for relief *available* under the IDEA, regardless of the statutory basis of their complaint. The IDEA explicitly provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that *before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter*.

20 U.S.C. § 1415(*l*) (emphasis added).

Since appellants do not contest that they have failed to exhaust the IDEA's administrative remedies, the question we must answer is simply whether they were required to do so before filing this lawsuit.

### 2. **Is the IDEA's Exhaustion Requirement Applicable in This Case?**

The applicability of the IDEA's exhaustion requirement to federal claims presented under statutes other than the IDEA is not a matter of first impression in this court. In *Hope*, we affirmed a district court's dismissal of a dyslexic student's disability and race

discrimination claims under the ADA for lack of subject matter jurisdiction, due to the plaintiffs' failure to exhaust administrative review procedures available under the IDEA. *Hope*, 69 F.3d at 688. The district court in *Hope* had held that the plaintiffs' request for injunctive relief against the school for its refusal to provide appropriate educational services was in essence an indirect challenge to the adequacy of the student's IEP and as such, "a textbook example of the types of cases justifying administrative exhaustion." *Hope v. Cortines,* 872 F. Supp. 14, 21 (E.D.N.Y. 1995).

In *Polera* – where, as in the present case, plaintiffs were seeking injunctive relief, as well as punitive and compensatory damages – we held that a visually impaired student's claims under the ADA and the Rehabilitation Act were subject to the exhaustion rule, because the equitable relief sought was available under the IDEA. *Polera*, 288 F.3d at 486. In that case, we squarely examined the availability of monetary damages under the IDEA and, although we found that "a damages remedy is . . . fundamentally inconsistent with" the IDEA's goals and is thus unavailable under that statute, *id.*, we concluded that a prayer for damages does not enable a plaintiff to "sidestep the exhaustion requirement of the IDEA," *id.* at 488. We emphasized that the "theory behind the grievance may activate the IDEA process, even if the plaintiff wants a form of relief that the IDEA does not supply." *Id.* (quoting *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.,* 98 F.3d 989, 991-92 (7th Cir. 1996)).

Both our holding in *Polera* and the district court's careful opinion in *Hope* are apposite. Appellants in their complaint seek damages and injunctive relief, along with attorneys' fees and court costs. The latter two items are indeed available under the IDEA. *See* 20 U.S.C. § 1415(i)(3)(B). By contrast, compensatory and punitive damages, as we explained in *Polera*, are not available under the IDEA. *Polera*, 288 F.3d at 483-86.

Nevertheless, in *Polera* we held that a disabled student who claims deficiencies in her educational program may not bypass the IDEA's administrative exhaustion rule merely by claiming monetary damages. *Id.* at 488. We thus decline to excuse appellants from the exhaustion requirement merely because in their suit they seek, *inter alia*, pecuniary damages, a remedy unavailable under the IDEA.

Whether the permanent and temporary injunctive relief sought by appellants is available under the IDEA poses a more puzzling question. Appellants disclaim any challenge to the educational sufficiency of John, Jr.'s IEP. They strongly argue that their claim is not one of violation of the IDEA's mandate for the provision of a "free appropriate public education" to each disabled student, but a claim of unlawful discrimination. Simba's role is to be "an independent life tool" for John, Jr., "'used to limit the effects of [his] disability, to allow him to continue to be more and more independent as he continues to grow and head toward a life as . . . a productive adult in a hearing society.'" *Cave*, 480 F. Supp. 2d at 619 (quoting Nancy Cave's testimony before the district court). In other words, they urge us to treat John, Jr. not as a *student* who is being deprived of an appropriate public education, but as a *person* who is being denied access to a public facility by reason of his disability and his non-educational need for a service dog. *See* Br. of Appellants at 8.

This is a slightly different scenario than the situations in either *Polera* or *Hope*. Although in both cases plaintiffs' federal claims were also premised on statutes other than the IDEA, plaintiffs were essentially alleging that they were not provided services tailored to meet their special needs due to deficiencies in their IEP. *Polera*, 288 F.3d at 480; *Hope,* 872 F. Supp. at 17-19. In this case, however, appellants have explicitly renounced any challenge to the educational adequacy of John, Jr.'s current IEP. They request only that

Simba be allowed to accompany John, Jr. while on the school premises as a matter of John, Jr.'s absolute right of entry into and use of a public facility. This case requires us to refine further our definition of types of relief available under the IDEA.

We are not convinced that appellants' claims are materially distinguishable from claims that could fall within the ambit of the IDEA. The high school principal and the school district's director of special education testified before the district court that John, Jr.'s class schedule under his existing IEP would have to be changed to accommodate the concerns of allergic students and teachers and to diminish the distractions that Simba's presence would engender. *Cave*, 480 F. Supp. 2d at 627-28, 631. School authorities would also have to make certain practical arrangements to maintain the smooth functioning of the school and to ensure both that Simba was receiving proper care and that John, Jr. continued to receive necessary and appropriate educational and support services. *Id.* It is hard to imagine, for example, how John, Jr. could still attend the physical education class while at the same time attending to the dog's needs; or how he could bring Simba to a class where another student with a certified allergic reaction to dogs would be present. *Id.* at 627, 631. These issues implicate John, Jr.'s IEP and would be best dealt with through the administrative process. The local and state education agencies are "uniquely well suited to review the content and implementation of IEPs . . . and to determine what changes, if any, are needed." *Polera*, 288 F.3d at 487.

We thus agree with the district court here that "at least in part, the plaintiffs are challenging the adequacy of John, Jr.'s IEP because it does not include a service dog." *Cave*, 480 F. Supp. 2d at 637. The relief appellants seek, "namely permission to bring the service dog to school, is in substance a modification of John, Jr.'s IEP. . . . [and] is available under the IDEA." *Id.* at 638. We also concur with the district court's finding that

- 11 -

"'[e]ducation,' as used within the IDEA, encompasses more than simply academics." *Id.* at 635. We note in that regard that one of the goals of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related *services designed to* meet their unique needs and *prepare them for* further education, employment, and *independent living.*" 20 U.S.C. § 1400(d)(1)(A) (emphasis added). A request for a service dog to be permitted to escort a disabled student at school as an "independent life tool" is hence not entirely beyond the bounds of the IDEA's educational scheme.[3]

Finally, we reject appellants' argument that their § 1983 discrimination claim is not subject to the exhaustion rule. The language of Section 1415(*l*) of the IDEA is sufficiently broad and encompasses complaints asserted under *any* federal statute, as long as they seek relief available under the IDEA. In *Hope*, we affirmed the dismissal of all of plaintiffs' claims, including their § 1983 cause of action, for want of subject matter jurisdiction due to non-exhaustion. *Hope*, 69 F.3d at 688; *see also Hope,* 872 F. Supp. at 19-20 (holding that the IDEA's exhaustion requirement applies to claims asserted under § 1983). In *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir. 1987), we found that the IDEA's exhaustion requirement is the "same for 42 U.S.C. § 1983 . . . actions" and that the administrative "remedies must be exhausted prior to instituting a civil action in federal court pursuant to . . . § 1983." *Id.* at 756.

Appellants rely on *Patsy v. Board of Regents*, 457 U.S. 496 (1982) and *Doe v. Pfrommer*, 148 F.3d 73 (2d Cir. 1998) for the proposition that exhaustion of administrative remedies is not a prerequisite to a § 1983 claim. Their reading of that caselaw is misguided. In *Doe*, we held that "exhaustion is necessary prior to bringing a § 1983 action only where Congress has carved out a specific exception to the general rule that exhaustion is not required." *Doe, 148 F.3d* at 78. *Doe* found that there was no such exception, because the statute in question (Section 722(d) of the

---

[3] The district court also correctly pointed out that *Sullivan ex rel. Sullivan v. Vallejo City Unified School District*, 731 F. Supp. 947 (E.D. Cal. 1990), is not controlling here. *Cave*, 480 F. Supp. 2d at 637-38.

Rehabilitation Act) did not contain an explicit exhaustion rule. *Id.* The present case, however, involves the IDEA's Section 1415(*l*), which unequivocally directs all plaintiffs seeking relief available under the IDEA to first exhaust the administrative procedures provided by the IDEA before filing a lawsuit. By enacting this section, Congress undoubtedly intended to introduce a "specific exception to the general rule" that § 1983 plaintiffs are not subject to the exhaustion requirement. Appellants' § 1983 claim thus falls within the scope of Section 1415(*l*) to the same extent as their claims under the ADA or the Rehabilitation Act.

Therefore, we hold that the IDEA's exhaustion rule applies to all of appellants' federal causes of action regardless of their statutory bases.

### 3. Is the Futility Exception to the Exhaustion Requirement Applicable?

The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy. *Honig*, 484 U.S. at 327 (stating that "parents may bypass the administrative process where exhaustion would be futile or inadequate" (citing *Smith v. Robinson*, 468 U.S. 992, 1014 n.17 (1984))). In *Heldman*, we acknowledged that the exhaustion requirement does not apply "when pursuit of the administrative remedies would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury." *Heldman*, 962 F.2d at 159. The party seeking to avoid exhaustion bears the burden of showing futility. *Polera*, 288 F.3d at 488 n.8 (citing *Honig*, 484 U.S. at 327).

Appellants have failed to demonstrate that their case warrants an exemption from the exhaustion rule. Appellants argue that there was no point in pursuing an administrative appeal of the findings of the Section 504 team or the decision of the CSE, because Dr. Robert Dillon, the superintendent of the school district, initially made a decisive recommendation against allowing the dog to enter the school's premises, a recommendation that would allegedly

control the outcome of subsequent administrative review procedures. *See* Br. of Appellants at 9. Weighty though this recommendation might have been at the initial stages of appellants' complaint against the school, there is not the slightest indication that the superintendent was in any position to affect, let alone control, the further determinations by local and state authorities. Appellants were entitled, under the IDEA and the New York Education Law, to a due process hearing, which would have been conducted by an impartial hearing officer; if dissatisfied with the officer's findings, they could have then pursued their claims at the state level before instituting a lawsuit. *Cave*, 480 F. Supp. 2d at 636 (citing N.Y. Educ. Law § 4404(1) – (2)). The IDEA explicitly requires that the officer conducting the hearing "not be . . . . a person having a personal or professional interest that conflicts with the person's objectivity in the hearing." 20 U.S.C. § 1415(f)(3)(A)(i)(II). Absent any evidence casting doubt on the impartiality of the local or the state review officers who would examine appellants' claims, we cannot presume that they would be biased.

In the past we have excused exhaustion in cases involving systemic violations that could not be remedied by local or state administrative agencies "because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 114 (2d Cir. 2004). For example, in *Jose P. v. Ambach*, 669 F.2d 865 (2d Cir. 1982), a class action by handicapped children challenging New York city and state educational authorities' failure to provide them with appropriate public education, the city's education commissioner acknowledged that "he would be unable to expeditiously process the appeals of all the members of the plaintiff class were they to pursue administrative proceedings." *Id.* at 869. Because of this admission and the complexity of the educational issues involved, we held that

- 14 -

we "could not be sure that resort to state administrative remedies would not be 'futile' for purposes of obtaining class relief." *Id.* Here, an individual student complains about the school's denial of his request that a service dog be permitted to accompany him in class. There is no allegation of a system-wide violation of the IDEA's mandates or of a district-wide policy of discrimination against hearing-impaired students. Nor do appellants make a plausible argument that the administrative process is so structurally tainted that they would not have been afforded a fair and impartial forum to present their claims.

We conclude that appellants were required to first seek relief through the administrative review procedures available to them under the IDEA before proceeding with a federal lawsuit. We sympathize with the concerns of John, Jr.'s parents and their effort to help him overcome the obstacles posed by his hearing impairment. Their federal claims, however, were not properly brought before the district court.

In *Mansfeld, Coldwater & Lake Michigan Railway Co. v. Swan*, 111 U.S. 379 (1884), the Supreme Court noted the existence of an "inflexible" rule that "without exception" requires federal courts, on their own motion, to determine if jurisdiction is lacking. *Id.* at 382. Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court *sua sponte. Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740 (1976). If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action. *Id.* Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." (Emphasis added). We therefore direct the district court to dismiss without prejudice appellants' federal causes of action for lack of subject matter jurisdiction.

**B. STATE LAW CLAIMS**

We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). "Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." ***United Mine Workers of Am. v. Gibbs***, 383 U.S. 715, 726 (1966). The New York state courts are, after all, in the best position to determine the validity of appellants' novel state law claims and endorse or reject their readings of newly amended state laws. During oral argument, counsel for the appellants acknowledged that the dismissal of the current federal lawsuit would expedite this desirable outcome, *i.e.*, the resolution of the state claims by the state courts. Consequently, appellants' state law claims should also be dismissed without prejudice. The dismissal will not have any impact on the statute of limitations for these claims, because, pursuant to 28 U.S.C. § 1367(d), the limitations period is tolled while the claims are pending and for 30 days after they are dismissed.

# III. CONCLUSION

We hold that appellants were obliged to exhaust the administrative remedies available under the IDEA before filing their suit in the district court. Their failure to comply with this obligation deprived the district court of subject matter jurisdiction over the federal causes of action, which must be dismissed. Absent an independent basis for the exercise of federal jurisdiction, the district court cannot adjudicate the state law claims, which must also be dismissed. Appellants' motion for a preliminary injunction should therefore have been dismissed for lack of jurisdiction, rather than on the ground that appellants are unlikely to succeed on the merits of their action. We have considered all of appellants' arguments and find them to be without merit.

For the reasons set forth above, we remand the case to the district court and direct it to dismiss without prejudice appellants' complaint in its entirety for lack of subject matter jurisdiction; and we deny appellants' motion to certify the state law issues to the New York Court of Appeals.