GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE
Petitioner Pelege Brevil brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241 ; the All Writs Act, 28 U.S.C. § 1651 ; and Article I, Section 9, Clause 2 of the United States Constitution challenging his detention by United States Immigration and Customs Enforcement ("ICE"), which is part of the United States Department of Homeland Security ("DHS").[1] For the reasons set forth below, the petition for writ of habeas corpus should be granted and the respondents should be directed to grant Brevil a bond hearing in accordance with the standard of Lora v. Shanahan, 804 F.3d 601, 616 (2d Cir. 2015).
I. BACKGROUND
A. Arrival and Pre-Detention Immigration Status
Pelege Brevil is a citizen of Haiti who first arrived to the United States in January 2003, when he was approximately eleven years old. See Decision and Orders of the Immigration Judge, dated May 16, 2016 (annexed as Ex. 4 to Gov't Return) ("Immig. J. Removal Order"), at *2.[2] He entered on a non-immigrant visa for a period not to last longer than six months, which he overstayed. See Declaration of Deportation Officer Mincheol N. So, dated May 22, 2017 (Docket # 8) ("So Decl."), ¶ 6. In 2010, Brevil obtained Temporary Protected Status ("TPS") under Section 244(a)(1) of the Immigration and Nationality Act, which protected him from deportation to Haiti and allowed him to lawfully work. See 28 U.S.C. § 1254(a)(1) ; Immig. J. Removal Order at *2; So Decl. ¶ 7.[3] In *208 December 2012, Brevil sought to renew his TPS. See Immig. J. Removal Order at *2-3. On September 27, 2013, United States Citizenship and Immigration Service denied the application for failure to provide evidence that had been requested. Id. at *3; So Decl. ¶ 9. Brevil sought to reopen the case, but the agency denied his appeal as untimely on February 3, 2014. See Immig. J. Removal Order at *3; So Decl. ¶ 9.
B. Arrests Preceding Detention
In the meantime, on June 1, 2012, Brevil was arrested and charged with Criminal Sexual Act in the Second Degree, a class D felony in New York State. Criminal Records, filed May 22, 2017 (annexed as Ex. 1 to Gov't Return) ("Crim. Record"), at *3. The criminal complaint accused him of engaging in oral sex with a 13-year-old when he was 19 years old. Id. at *3. On November 15, 2012, Brevil pleaded guilty to Sexual Misconduct, a class A misdemeanor. Id. at *2, *7. He was sentenced to six years' probation and was required to comply with an order of protection. Id. at *8. He was also required to register as a sex offender. Id. at *9.
Brevil was arrested two more times. On April 23, 2015, he was arrested for misdemeanor Sexual Misconduct. Id. at *6. The charge was ultimately adjourned in contemplation of dismissal. Id. at *6-7; see also Immig. J. Removal Order at *4. Brevil was arrested again on August 21, 2015, and charged with Assault with Intent to Cause Physical Injury, a misdemeanor. Crim. Record at *5-6; Misdemeanor Information, dated Aug. 21, 2015 (annexed as Ex. 2 to Gov't Return), at *2. The charge remains pending. See So Decl. ¶ 10; Immig. J. Removal Order at *4.
C. Detention and Subsequent Removal Proceedings
On August 31, 2015, shortly after his third arrest, ICE detained Brevil and served him with a Notice to Appear ("NTA"), a charging document used to commence removal proceedings. See Notice to Appear, dated June 19, 2015 (annexed as Ex. 3 to Gov't Return) ("NTA"), at *2-3; So Decl. ¶ 11. Alleging that Brevil exceeded his legal authorization to remain in the United States and that he was convicted of "Sexual Misconduct in the Second Degree," ICE charged him as removable under (1) 8 U.S.C. § 1227(a)(1)(B), as an alien who, after admission, remained beyond the time permitted; (2) 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who has been convicted of an aggravated felony; and (3) 8 U.S.C. § 1227(a)(2)(E)(i), as an alien who has been convicted of a child-abuse crime. See NTA at *4. Believing that Brevil was subject to mandatory detention under 8 U.S.C. § 1226(c), based on his criminal conviction for sexual misconduct, ICE detained Brevil. See So Decl. ¶ 11.
In fact, Brevil had not been convicted of "Sexual Misconduct in the Second Degree," a purported felony,[4] but rather of Sexual Misconduct, a misdemeanor, the *209 crime to which he pled guilty. See N.Y. Penal Law §§ 130.20, 130.45 ; see also Crim. Record at *2-3. Thus, when Brevil appeared before an immigration judge ("IJ") on September 16, 2015, in response to the NTA, the IJ sustained only the charge of removability under 8 U.S.C. § 1227(a)(1)(B) -presence in the United States beyond the time authorized. So Decl. ¶ 13.
A month later, on October 27, 2015, with the assistance of counsel, Brevil petitioned for deferral of removal under the Convention Against Torture. Immig. J. Removal Order at *3. That same day, he requested a bond hearing before an IJ. So Decl. ¶ 15. Approximately 6 months later, he also reapplied for TPS. Id. ¶ 17.
On December 30, 2015, or four months after he was detained, Brevil received a bond hearing before an IJ. Id. ¶ 16; see also Bond Hearing Transcript, dated Dec. 30, 2015 (annexed as Ex. A to Supp. Return) ("Bond Tr."). At the hearing, the IJ determined that Brevil was not subject to mandatory detention under 8 U.S.C. § 1226(c) and that he was instead being detained pursuant to § 1226(a) -discretionary detention for non-criminal aliens. Bond Tr. 25:5-7; So Decl. ¶ 16. The IJ explained that to be released from detention, Brevil bore the burden of proving by clear and convincing evidence that he was neither a flight risk nor a danger to the community. Bond Tr. 27:10-12. After the hearing, the IJ found that Brevil had failed to carry this burden because Brevil did not have lawful status in the United States and had overstayed his visa, and no longer held TPS, id. 27:11-19; because Brevil failed to present evidence of consistent employment or that he ever filed tax returns, id. 27:20-23, 28:11-14; because Brevil had three arrests by 23, the first of which the IJ characterized as "serious," id. 27:24-28:10; because Brevil did not establish to the IJ's satisfaction that he had complied with the terms of his probation, id. 28:14-29:6; and because Brevil had an existing bench warrant against him for failure to appear at the local criminal court, id. 29:7-11. The IJ noted that he did not find Brevil's testimony credible, id. 28:8-10, 29:8-11, and that Brevil's IQ results were irrelevant to whether he was a danger to the community, id. 29:19-21. Because the IJ found that Brevil failed to carry his burden, the IJ denied Brevil release on secured bond or conditional parole. Id. 29:22-24; see also Order of the Immigration Judge with Respect to Custody, dated May 11, 2016 (annexed as Ex. 5 to Gov't Return) ("Bond Order"). Brevil did not appeal the decision or seek a custody redetermination hearing at a later time during his removal proceedings. So Decl. ¶ 16.
On May 16, 2016, an IJ denied Brevil's application for deferral of removal and his application for TPS. See Immig. J. Removal Order. Accordingly, the IJ ordered Brevil removed to Haiti. Id. at *9. Brevil filed a timely appeal of the removal order to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on October 28, 2016. See In re Brevil, dated Oct. 28, 2016 (annexed as Ex. 6 to Gov't Return) ("BIA Decision"). As of that date, Brevil's removal order became administratively final. See So Decl. ¶ 19. On December 15, 2016, ICE requested permission from Haiti to place Brevil on the next scheduled charter flight to Haiti, and on December 27, 2016, the Haitian government approved the request. Id. ¶ 22. Brevil was scheduled to be removed to Haiti on a January 2017 charter flight. Id.
D. Petition for Review in the Second Circuit and the "Forbearance Policy"
Before he was removed, however, on December 9, 2016, Brevil filed a petition *210 for review ("PFR") in the U.S. Court of Appeals for the Second Circuit and moved for a stay of removal.[5] See Petition for Review of Agency Order, Brevil v. Sessions, No. 16-4149 (2d Cir. Dec. 9, 2016) (Docket # 1); Motion for a Stay of Removal, Brevil, No. 16-4149 (2d Cir. Dec. 9, 2016) (Docket # 5); So Decl. ¶ 20. On December 19, 2016, the Government filed its opposition to the stay motion, see U.S. Opposition to Motion for a Stay of Removal, Brevil, No. 16-4149 (2d Cir. Dec. 19, 2016) (Docket # 18). On December 28, 2016, ICE cancelled its plans to remove Brevil from the United States on the January 2017 flight to Haiti. See So Decl. ¶ 22.
This cancellation was done in compliance with the Government's so-called "Forbearance Policy" in effect in the Second Circuit. Since 1995, the Government has taken the position that " 'an alien who has filed a petition for review [in the Second Circuit] and has also filed a motion for a stay of removal will' not be removed 'until the Court of Appeals has made a ruling' on the motion seeking a stay." Letter from David McConnell to Judge Jon O. Newman, dated Apr. 8, 2009 (annexed as Ex. 10 to Gov't Return) (internal quotation marks omitted) (quoting Letter from Judge Jon O. Newman to David McConnell, dated Mar. 16, 2009 (annexed as Ex. 9 to Gov't Return) ("J. Newman Letter") ); see also In re Immigration Petitions for Review Pending in U.S. Court of Appeals for the Second Cir., 702 F.3d 160, 162 (2d Cir. 2012) ("While a petition is pending in this Court, the Government's forbearance policy has assured that removal will not occur."). While in theory the forbearance policy operates only as a stop-gap measure until the Second Circuit rules on the alien's motion for a stay (or the Government's motion to dismiss or motion for summary adjudication), see J. Newman Letter, in practice the "Second Circuit does not, as a rule, rule upon motions for a stay of removal." Heredia v. Shanahan, 245 F.Supp.3d 521, 523-24 (S.D.N.Y. 2017) (citing In re Immigration Petitions for Review, 702 F.3d at 160-62 ), appeal docketed, Heredia v. Decker, No. 17-1720 (2d Cir. May 26, 2017); see also Efstathiadis v. Holder, 752 F.3d 591, 599 n.5 (2d Cir. 2014) ("While a petition is pending in this Court, the Government's forbearance policy assures that the filing of a motion to stay removal, as has been done here, will suffice to prevent removal."); Argueta Anariba v. Shanahan, 190 F.Supp.3d 344, 348 (S.D.N.Y. 2016) ("It appears that, as a result of this policy, the Second Circuit Court of Appeals has in some instances declined to act on motions for stays of removal when filed alongside petitions for review.").
Several months after the stay motion was filed, the Government moved to expedite a decision on the motion. See U.S. Motion to Expedite a Decision on the Motion to Stay Removal, Brevil, No. 16-4149 (2d Cir. May 8, 2017) (Docket # 61).[6] The PFRs, stay motion, and motion to expedite were submitted to a Second Circuit panel on October 23, 2017. See NAC Petition, Brevil, No. 16-4149 (2d Cir. Oct. 23, 2017) (Docket # 103). On December 29, 2017, the Government informed the Second Circuit *211 that it would not forbear Brevil's removal after January 8, 2018. See Letter from Brandon M. Waterman, dated Dec. 29, 2017 (Docket # 22); see also Respondent's Notice of Intent to Remove, Brevil, No. 16-4149 (2d Cir. Dec. 29, 2017) (Docket # 105). The Second Circuit granted a stay of removal on January 9, 2018, and denied the motion to expedite as moot. See Motion Order, Brevil, No. 16-4149 (2d Cir. Jan. 9, 2018) (Docket # 114). As of today, the Second Circuit has not adjudicated Brevil's PFR.
E. Review of Detention by ICE
In January 2017, ICE reviewed Brevil's custody status and determined, on February 10, 2017, that he should remain in detention pending removal. See Decision to Continue Detention, dated Feb. 10, 2017 (annexed as Ex. 7 to Gov't Return). ICE repeated its custody status review on June 2, 2017 (after this petition was filed) and determined that Brevil should remain detained. See Decision to Continue Detention, dated June 2, 2017 (attached to Letter From Brandon M. Waterman, dated Oct. 6, 2017 (Docket # 14) ).
F. The Instant Petition
Brevil filed this petition for habeas corpus on February 27, 2017. See Habeas Pet. The Government filed its opposition on May 22, 2017. See Gov't Opp'n. Brevil has now been detained for about 28 months.
II. DISCUSSION
Brevil seeks to be released pending review of his case by the Second Circuit. Pet'r Reply at 16. Alternatively, he seeks a bond hearing in accordance with standards set forth in the Second Circuit's decision in Lora, 804 F.3d at 616. Pet'r Reply at 16.
A. Brevil Is Detained Under 8 U.S.C. § 1226(a)
Before the Second Circuit ordered a stay of removal, the parties had disputed which statute authorizes Brevil's current detention: 8 U.S.C. § 1226(a) or 8 U.S.C. § 1231. See Pet'r Reply at 6; Gov't Opp'n at 10.
Section 1226 governs the arrest and detention of any alien "pending a decision on whether the alien is to be removed from the United States." See also Wang v. Ashcroft, 320 F.3d 130, 146 (2d Cir. 2003) (" 8 U.S.C. § 1226 [ ] governs the detention of aliens against whom the Government has initiated removal proceedings, but whose removal periods have not yet commenced."). Subsection (a) states that the Government, "[o]n a warrant issued by the Attorney General, ... may" arrest an alien "pending a decision on whether the alien is to be removed from the United States" and "pending such decision ... (1) may continue to detain the arrested alien; and (2) may release the alien on-(A) [secured bond]; or (B) conditional parole." § 1226(a)(1)-(2). The Immigration Court Rules of Procedure provide that, following an initial bond hearing, an alien detained under § 1226(a) may obtain a bond redetermination hearing "only upon a showing that the alien's circumstances have changed materially since the prior bond [hearing]." 8 C.F.R. § 1003.19(e).
In contrast, " 8 U.S.C. § 1231 [ ] governs the detention of aliens subject to final orders of removal." Wang, 320 F.3d at 145. Section 1231 requires the government to detain aliens with final removal orders during what it identifies as a 90-day "removal period"-a period that begins on "the date the order of removal becomes administratively final," unless the "order is judicially reviewed and if a court orders a stay of the removal of the alien." § 1231(a)(1)(A)-(B), (a)(2) ; see also *212 Zadvydas v. Davis, 533 U.S. 678, 683, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (summarizing § 1231(a) ). If the order is judicially reviewed and the reviewing court orders a stay, then the removal period identified in § 1231 does not start until "the date of the court's final order." § 1231 (a)(1)(B)(ii). Up until that point, ICE's detention authority "revert[s]" to whatever provision previously governed ICE's authority over a particular alien. See Wang, 320 F.3d at 147 ("where a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under [ § 1226 ] until the court renders its decision"); accord Argueta Anariba, 190 F.Supp.3d at 349 (S.D.N.Y. 2016) ; Luna-Aponte v. Holder, 743 F.Supp.2d 189, 197 (W.D.N.Y. 2010). In this case, the provision that governed was § 1226(a).
At the time the instant petition was filed, the Second Circuit had not granted a stay of removal and thus the parties disputed whether § 1231 applied. Because the Second Circuit has now "order[ed] a stay" of Brevil's removal, ICE's authority to detain Brevil has reverted to § 1226(a).
B. Application of Lora to Detainees Held Pursuant to § 1226(a)
Brevil argues that because he is detained under § 1226(a), his continuing custody violates due process inasmuch as he has been detained longer than six months without a custody hearing in compliance with the requirements of Lora, 804 F.3d 601. See Habeas Pet. at 8-10. The Government in turn argues that Lora does not apply to his case, and even if it did, Brevil already received an individualized bond hearing and failed to appeal that ruling. Gov't Opp'n at 13-15; Gov't Supp. Mem. at 5-7.
The Fifth Amendment entitles aliens, "whether their presence here is lawful, unlawful, temporary, or permanent" to due process protection, "though the nature of that protection may vary depending upon status and circumstance." Zadvydas, 533 U.S. at 693-94, 121 S.Ct. 2491. In Lora, the Second Circuit noted that the problem of indefinite pre-removal-order detention under § 1226(c) had "worsened considerably" in the years since the Supreme Court's last decision on its constitutionality, Demore v. Kim, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). See 804 F.3d at 605. While "[i]n 2003, the average detention time for most section 1226(c) detainees was approximately forty-seven days," Lora observed that as of October 2015, "a non-citizen detained under section 1226(c) who contests his or her removal regularly spends many months and sometimes years in detention due to the enormous backlog in immigration proceedings." Id. Lora estimated that just within the jurisdiction of the Second Circuit, there were "thousands of individuals in immigration detention ... who languish in county jails and in short-term and permanent ICE facilities," pending resolution of their cases. Id.
Lora recognized that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 606 (quoting Demore, 538 U.S. at 526, 123 S.Ct. 1708 ). Congress, in fact, had made it "quite clear that it wanted" detainees with serious criminal records and who "are dangerous or have no ties to a community ... detained pending deportation." Id. at 605. Yet, some detainees are "non-citizens who, for a variety of individualized reasons, are not dangerous, have strong family and community ties, are not flight risks and may have meritorious defenses to deportation at such time as they are able to present them." Id. And the Supreme Court has "made clear that the indefinite detention of a non-citizen 'raise[s] serious constitutional *213 concerns' in that '[f]reedom from imprisonment-from government custody, detention, or other forms of physical restraint-lies at the heart of the liberty that [the Due Process] Clause protects.' " Id. (alterations in original) (quoting Zadvydas, 533 U.S. at 682, 121 S.Ct. 2491 ). Accordingly, the lack of a "temporal limitation" in § 1226(c) raised "significant constitutional concerns." Id. at 606.
To avoid those concerns, the Second Circuit held that "an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention." Id. at 616. The Second Circuit additionally held that "the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." Id. (citing Rodriguez v. Robbins, 715 F.3d 1127, 1131 (9th Cir. 2013) ).[7]
Since Lora , the Second Circuit has not decided whether the rule in Lora applies to aliens detained under § 1226(a) as well as § 1226(c).
Section 1226(a)"provides for [discretionary] detention during removal proceedings subject to an individualized bond hearing." Nguti v. Sessions, 259 F.Supp.3d 6, 9 (W.D.N.Y. 2017) (citation omitted), appeal docketed, No. 17-2086 (2d Cir. June 30, 2017). At such an "individualized bond hearing," DHS regulations provide that
the alien must first demonstrate, by clear and convincing evidence, that release would not pose a danger to other persons or property. If an alien meets this burden, the alien must further demonstrate, by clear and convincing evidence, that the alien is likely to appear for any scheduled proceeding or interview.
8 C.F.R. § 1003.19(h)(3) ; see also 8 C.F.R. § 1236.1(c)(8) ("[T]he alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); accord In re Adeniji, 22 I. & N. Dec. 1102, 1111-13, 1999 WL 1100900 (BIA 1999). In such cases, the decision whether to detain an alien is made first by the DHS District Director; then, if appealed, by an IJ; and upon further appeal, by the BIA.. 8 C.F.R. § 1236.1(d)(1), (3) ; accord Sopo v. U.S. Att'y Gen., 825 F.3d 1199, 1208 (11th Cir. 2016). If denied release from custody, a § 1226(a) detainee may seek a custody redetermination hearing upon a showing of changed circumstances. 8 C.F.R.§ 1003.19(e).
This "individualized bond hearing" thus differs from a Lora bond hearing in at least two important respects. See Nguti, 259 F.Supp.3d at 10. First, it is available sooner than a Lora bond hearing, which is available only for detainees held longer than six months. Id. Second, it places the burden of proof, by clear and convincing evidence, on the detainee to show that he or she "would not pose a danger to property or persons, and that [he or she] is likely to appear for any future proceeding." § 1236.1(c)(8). Lora , in contrast, placed the burden on the Government. 804 F.3d at 616.
The Government argues that " Lora applies only to aliens subject to mandatory detention under section 1226(c)...." Gov't Supp. Mem. at 7. The Government's position, if accepted, would result in criminal aliens detained under § 1226(c) receiving greater procedural protections against *214 prolonged detention than non-criminal aliens detained as an exercise of discretion under § 1226(a). One case in this Circuit has examined the reasoning behind the Government's position and found it "unsupported and untenable." Nguti, 259 F.Supp.3d at 10.
First, Nguti noted that Congress created a system that comparatively advantages non-criminal detainees over criminal detainees in removal proceedings. Id. at 10. Thus, "it makes perfect sense that whether an alien is released on bail pending his or her removal proceedings should depend in part on the alien's criminal history (or lack thereof)." Id. Second, the Nguti court questioned why the petitioner in Lora , who was a criminal detainee held under § 1226(c), was eligible for a Lora bond hearing after six months, but a § 1226(a) detainee, subject only to discretionary detention, was not so entitled. Id. at 11. A § 1226(a) detainee "would seem to have a greater liberty interest than a criminal alien." Id. (quoting Enoh v. Sessions, 236 F.Supp.3d 787, 791 (W.D.N.Y. 2017) ). Third, it reasoned that such an argument ignores the Second Circuit's express adoption of the Ninth Circuit's due process analysis in Rodriguez, 715 F.3d at 1127, a case which extended Lora -like procedural protections to § 1226(c) detainees after doing so for § 1226(a) detainees, id. at 1135, 1138 (citing Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942 (9th Cir. 2008) ). Nguti, 259 F.Supp.3d at 12. That adoption "makes it highly unlikely that the Second Circuit would disagree with affording § 1226(a) detainees the exact same procedural protection it afforded a § 1226(c) detainee in Lora ." Id. at 13. Finally, Nguti recognized that three decisions from this district have already extended Lora to detainees held under § 1225(b) (which applies to aliens detained upon entering the United States) for analogous reasons. Id. at 14 (citing Heredia, 245 F.Supp.3d at 526, Ricketts v. Simonse, 2016 WL 7335675 (S.D.N.Y. Dec. 16, 2016), appeal docketed, No. 16-3186 (2d Cir. Sept. 15, 2016), and Arias v. Aviles, 2016 WL 3906738 (S.D.N.Y. July 14, 2016) ). All three courts agreed that restricting Lora procedural protections to § 1226(c) detainees "could result in affording more protections to non-resident aliens detained under § 1226(c)... than to LPRs detained pursuant to § 1225(b) and merely accused of wrongdoing." Heredia, 245 F.Supp.3d at 526 (quoting Arias, 2016 WL 3906738, at *9 ).
We agree with the reasoning of the Nguti court and conclude that Lora requires that § 1226(a) detainees held for longer than six months must receive bond hearings in compliance with the procedural protections announced in Lora . Here, Brevil's detention began on August 31, 2015. See So Decl. ¶ 3. He was detained under § 1226(a) until October 28, 2016, when his removal order became administratively final. Id. ¶ 4. This detention was over 13 months long. Accordingly, Brevil was entitled to a bail hearing in accordance with Lora .
Brevil received a bond hearing before an IJ on December 30, 2015, or four months after he was detained, but the hearing placed the burden on Brevil to show that he was not a danger to the community or a flight risk. See Bond Tr. 25:5-7, 29:22-24. Consequently, he was still entitled to a Lora bail hearing after six months had elapsed. While his claims for relief from pre-removal-order detention became moot once he became subject to a final order of removal, he filed a PFR with the Second Circuit on December 9, 2016, and was granted a stay of removal on January 9, 2018, thereby tolling the removal period and reverting ICE's detention authority over him to § 1226(a). See Section II.A.
*215 Thus, he has now been detained under § 1226(a) for an additional year and a month without a bail hearing.
The Government argues that, assuming his detention does violate Lora , his petition should nonetheless be denied for failure to exhaust administrative remedies in light of the fact that Brevil did not appeal the adverse ruling on his December 30, 2015 bond hearing. See Gov't Opp'n at 19-23. As the Government concedes, however, Gov't Opp'n at 19, there is no statutory basis for requiring an alien to exhaust administrative remedies prior to challenging his continued detention in federal court, Araujo-Cortes v. Shanahan, 35 F.Supp.3d 533, 538 (S.D.N.Y. 2014).
Certainly, we recognize that courts in this district and elsewhere have imposed exhaustion requirements on some aliens challenging their custody as a matter of prudence. See, e.g., Bogle v. DuBois, 236 F.Supp.3d 820, 822 (S.D.N.Y. 2017) (requiring petitioner to first appeal denial of bond to BIA before filing habeas petition); Paz Nativi v. Shanahan, 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) (same) (collecting cases); Cepeda v. Shanahan, 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016) (same). But courts may excuse the exhaustion requirement when "administrative appeal would be futile ...." Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003) (internal quotation marks omitted) (quoting Able v. United States, 88 F.3d 1280, 1288 (2d Cir. 1996) ). Pursuing administrative remedies may be futile "because the administrative procedures do not provide an adequate remedy," Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 249 (2d Cir. 2008), or when "the agency has predetermined the issue before it," Monestime v. Reilly, 704 F.Supp.2d 453, 456 (S.D.N.Y. 2010) (quoting Garcia v. Shanahan, 615 F.Supp.2d 175, 180 (S.D.N.Y. 2009) ). Under such circumstances, the purposes behind the administrative exhaustion requirement-such as developing the facts to facilitate judicial review and resolving errors to avoid unnecessary judicial review-"are no longer served, and thus a court will release the [petitioner] from the requirement." Beharry, 329 F.3d at 62 (citing Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993). Here, appeal of the IJ's decision by Brevil would have been futile, given that Brevil challenges the constitutionality of the procedures followed by IJs at § 1226(a) bond hearings, see Pet'r Reply at 13; the BIA has already determined and continues to hold that such procedures are correct notwithstanding Lora , see, e.g., In re Borbot, 2016 WL 7655983, at *1 (BIA Sept. 1, 2016) ( § 1226(a) detainee "has the burden of demonstrating ... that his release would not pose a danger to persons or property, among other things."); and the BIA "does not have jurisdiction to adjudicate constitutional issues," United States v. Gonzalez-Roque, 301 F.3d 39, 48 (2d Cir. 2002), such as whether the Second Circuit's Lora procedural safeguards apply to § 1226(a) detainees. Additionally, because Brevil raises a purely legal question of whether Lora applies to § 1226(a) detainees, further development of the record will not increase the efficiency of judicial review.
The Government cites cases, Gov't Opp'n at 20, in which the detainee was not excused from exhaustion on the ground that the BIA "c[ould] review, and reverse, the IJ's bond determination," thereby rendering "disposition of [the petitioner's] constitutional concerns unnecessary," Cepeda, 2016 WL 3144394, at *2 ; see also Paz Nativi, 2017 WL 281751, at *2 (same). In both cases, however, the petitioner had been afforded the type of hearing to which he claimed he was entitled. See Cepeda, 2016 WL 3144394, at *2 ;
*216 Paz Nativi, 2017 WL 281751, at *2. The same is true in other cases cited by the Government-that is, the alien had been afforded the type of hearing to which he claimed he was entitled and courts properly required the alien to exhaust his remedies within the agency as to the determination made at that proper hearing. See, e.g., Bogle, 236 F.Supp.3d at 822 ("petitioner concedes that he received the hearing mandated by Lora in a timely fashion"); Molina Posadas v. Shanahan, 2016 WL 146556, at *1 (S.D.N.Y. Jan. 12, 2016) (same).[8] Here, by contrast, Brevil was not afforded the proper type of bond hearing and the BIA could not address his challenge. Given that no additional factual record is necessary to adjudicate the constitutional challenge Brevil makes here, exhaustion will be excused. See generally Beharry, 329 F.3d at 62.
Finally, the Government argues that the Court lacks jurisdiction over the instant petition because 8 U.S.C. § 1226(e) bars judicial review of discretionary bond decisions. Gov't Opp'n at 23. But Brevil does not challenge the exercise of discretion. Rather, he challenges the constitutionality of the procedures followed at his bond hearing. Thus, § 1226(e) does not bar judicial review. See, e.g., Bogle, 236 F.Supp.3d at 822 ("Claims of constitutional infirmity in the procedures followed at a bond hearing are not precluded by § 1226(e) ) (citing Cepeda, 2016 WL 3144394, at *2 and Gordon v. Shanahan, 2015 WL 1176706, at *2 (S.D.N.Y. Mar. 13, 2015) ).
III. CONCLUSION
For the foregoing reasons, Brevil's petition for a writ of habeas corpus (Docket # 1) should be granted and the Government should be directed to afford Brevil a prompt bond hearing that complies with the procedure set forth in Lora .
PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION
Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court, with copies sent to the Hon. Laura Taylor Swain at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections or responses must be directed to Judge Swain. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Petition of [sic] Writ of Habeas Corpus, filed Feb. 27, 2017 (Docket # 1) ("Habeas Pet."); Return to Habeas Petition, filed May 22, 2017 (Docket # 7) ("Gov't Return"); Respondents' Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus, filed May 22, 2017 (Docket # 9) ("Gov't Opp'n"); Petitioner's Reply to Respondents' Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, filed July 6, 2017 (Docket # 8) ("Pet'r Reply"); Respondents' Supplemental Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, filed Nov. 15, 2017 (Docket # 19) ("Gov't Supp. Mem."); Supplemental Return to Habeas Petition, filed Nov. 15, 2017 (Docket # 20) ("Supp. Return").

Citations in the form "*__" refer to page numbers assigned by the ECF system.

Following the January 2010 earthquake in Haiti, the Secretary of the Department of Homeland Security designated Haiti for Temporary Protected Status (TPS). See Designation of Haiti Under the Temporary Protected Status Program, 75 Fed. Reg. 3476 (Jan. 21, 2010). The Secretary of Homeland Security has periodically extended Haiti's designation in the years following. See, e.g., Extension of the Designation of Haiti for Temporary Protected Status, 80 Fed. Reg. 51582 (Aug. 25, 2015) (extending designation of Haiti for 18 months). On November 20, 2017, the Acting Secretary of Homeland Security, Elaine Duke, announced that the TPS designation for Haiti would be terminated effective July 22, 2019. See Acting Secretary Elaine Duke Announcement on Temporary Protected Status for Haiti, U.S. Department of Homeland Security (Nov. 20, 2017), https://www.dhs.gov/news/2017/11/20/acting-secretary-elaine-duke-announcement-temporary-protected-status-haiti.

No such crime exists under New York law, but the NTA was apparently referring to Brevil's June 1, 2012 arrest for Criminal Sexual Act in the Second Degree, N.Y. Penal Law § 130.45. See Crim. Record at *3.

The Government states that Brevil filed his PFR on or around November 23, 2016. See So Decl. ¶ 20. The Second Circuit docket sheet, however, reflects a filing date of December 9, 2016.

On June 28, 2017, Brevil filed another PFR relating to the BIA's denial of his motion for reconsideration. See Petition for Review of Agency Order, Brevil v. Sessions, No. 17-2032 (2d Cir. June 28, 2017) (Docket # 1). That case was consolidated with Brevil's initial PFR, see Petition for Review of Agency Order, Brevil, No. 16-4149 (2d Cir. June 28, 2017) (Docket # 69), and was later dismissed, see Motion Order, Brevil, No. 16-4149 (2d Cir. Jan. 9, 2018) (Docket # 114).

The issue presented in Lora was raised in Jennings v. Rodriguez, 804 F.3d 1060 (9th Cir. 2015), and the Supreme Court has granted certiorari in that case, see--- U.S. ----, 136 S.Ct. 2489, 195 L.Ed.2d 821 (2016).

In the other cases cited by the Government, see Gov't Opp'n at 20, the alien had actually appealed the bond decision made by an IJ, but that appeal was still pending and the courts required the alien to await the outcome of the appeal before seeking judicial review. See, e.g., Palaniandi v. Jones, 2016 WL 1459607, at *1-2 (S.D.N.Y. Mar. 10, 2016) ; Herrera v. Mechkowski, 2016 WL 595999, at *1 (S.D.N.Y. Feb. 11, 2016).